## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ANTHONY MAGLIETTA, STEVEN REID, AND JERRY VICTORIOUS,** | : : : : | |
| *Plaintiffs*, | : | No. 5:25-cv-02364-WB |
| v. | : : | |
| **AMERICA PAC; GROUP AMERICA, LLC; AND ELON MUSK** | : : : | |
| *Defendants*. | : : | |

## DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS

## TABLE OF CONTENTS

I.    Introduction ............................................................................................................. 1

II.   Factual Background ................................................................................................. 2

    A.    America PAC's Citizen Petition Program .................................................... 2

    B.    Plaintiffs' Alleged Participation in the Citizen Petition Program ........................ 3

III.  Argument and Authority ......................................................................................... 5

    A.    This case should be dismissed under Rule 12(b)(1) for lack of subject-matter jurisdiction ........................................................................................................ 6

        1.    Standard for dismissal under Rule 12(b)(1). .............................................. 6

        2.    Plaintiffs lack standing because their vague allegations fail to establish an injury-in-fact, traceability, or redressability. ............................................ 7

        3.    Plaintiffs' claims against Musk and Group America are *particularly* ripe for dismissal because Plaintiffs allege no conduct by these Defendants that relates to America PAC's petition signature or referral payments. ...................................11

        4.    Because Plaintiffs do not allege that they were not paid for signing America PAC's petition, they lack standing to sue on behalf of such a class. ....... 12

    B.    This case should be dismissed under Rule 12(b)(3) for improper venue. ........... 13

        1.    Standard for dismissal under rule 12(b)(3). ............................................. 13

        2.    Venue is improper in the Eastern District of Pennsylvania because a substantial part of the events giving rise to the claims did not occur in this district. ...................................................................................................... 14

    C.    This case should be dismissed under Rule 12(b)(6) for failure to state a plausible claim. ............................................................................................................... 18

        1.    Standard for dismissal under Rule 12(b)(6). ............................................ 18

        2.    Plaintiffs fail to state a plausible breach of contract claim. ..................... 18

        3.    Plaintiffs fail to state a plausible promissory estoppel claim. ................... 22

IV.   Conclusion ............................................................................................................ 24

**T**ABLE OF **A**UTHORITIES

## Cases

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................. 18, 19

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................... 18, 19

*Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc.*, 247 F.3d 79 (3d Cir. 2001).......................... 19

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212 (3d Cir. 2011) ..................................... 18

*Cephas v. George W. Hill Corr. Facility*, No. CIV.A. 09-6014, 2011 WL 2695311 (E.D. Pa. July 12, 2011) ............................................................................ 19

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) ............................................... 8

*Conley v. Gibson*, 355 U.S. 41 (1957) ........................................................... 19

*Connelly v. Lane Constr. Corp.*, 809 F.3d 780 (3d Cir. 2016) ..................................... 18

*Constitution Party of Pennsylvania v. Aichele*, 757 F.3d 347 (3d Cir. 2014) ...................... 11

*Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291 (3d Cir. 1994) ................... 14, 15, 17

*Cumberland Truck Equip. Co. v. Detroit Diesel Corp.*, 401 F. Supp. 2d 415 (E.D. Pa. 2005) 5, 15, 16, 17

*Danvers Motor Co., Inc. v. Ford Motor Co.*, 432 F.3d 286 (3d Cir. 2005) ..................... 7, 9, 10

*E. Tex. Motor Freight Sys. Inc. v. Rodriguez*, 431 U.S. 395 (1977) ............................... 12

*Engstrom v. John Nuveen & Co., Inc.*, 688 F. Supp. 953 (E.D. Pa. 1987) ....................... 22, 23

*Finkelman v. Nat'l Football League*, 810 F.3d 187 (3d Cir. 2016) ...................... 6, 8, 9, 10

*Frederico v. Home Depot*, 507 F.3d 188 (3d Cir. 2007) ..................................... 19, 20, 21

*Friends of the Earth, Inc. v. Laidlaw Env'tl Servs., Inc.*, 528 U.S. 167 (2000).................... 7

*George v. Rushmore Serv. Ctr., LLC*, 114 F.4th 226 (3d Cir. 2024) ................................. 5

*Gillette v. Owens-Illinois, Inc.*, No. CIV. A. 85-3506, 1985 WL 3412 (E.D. Pa. Oct. 30, 1985) 14

*Great Seal Moorish Sci. Temple of Am., Inc. v. New Jersey*, No. CIV.A. 05-CV-345, 2005 WL 2396311 (E.D. Pa. Sept. 28, 2005) ..................................................... 15

*Hardwick v. Consumer Guardian Specialists, LLC*, No. 2:20-CV-00060, 2022 WL 669212 (W.D. Pa. Mar. 7, 2022)................................................................... 15

*In re Asbestos School Litigation*, No. 83-0268, 1990 WL 20222 (E.D. Pa. Mar. 5, 1990) .......... 16

*In re Corestates Trust Fee Litig.*, 837 F. Supp. 104 (E.D. Pa. 1993) ............................. 6

*In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235 (3d Cir. 2012) ................................................................................ 8, 9

*Johnson University Hospital at Hamilton, Inc. v. SMX Capital, Inc.*, 2013 WL 4510005 (D.N.J. Aug. 26, 2013) ......................................................................... 20

*Leroy v. Great W. United Corp.*, 443 U.S. 173 (1979)............................................. 5

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) ............................................... 7, 11

*Madotto v. Rosman*, No. CIV.A. 98-3221, 1998 WL 961390 (E.D. Pa. Dec. 10, 1998)............... 5

*Massaro Ltd. P'ship (Park W. Two) v. Baker & Taylor Inc.*, 161 F. App'x 185 (3d Cir. 2005) ... 22

*Nebroskie v. Ameriline Trucking Inc.*, No. CV 18-1070, 2019 WL 883844 (E.D. Pa. Feb. 22, 2019) ................................................................................... 14

*O'Shea v. Littleton*, 414 U.S. 488 (1974) ................................................................. 7

*Pandit v. Temple Univ.*, No. CV 24-1475, 2025 WL 388818 (E.D. Pa. Feb. 4, 2025)............... 22

*Pub. Int. Rsch. Grp. of N.J., Inc. v. Magnesium Elektron, Inc.*, 123 F.3d 111 (3d Cir. 1997) ....... 5

*Residences at Bay Point Condo. Ass'n, Inc. v. Standard Fire Ins. Co.*, 641 F. App'x 181 (3d Cir. 2016) ................................................................................................................. 5

*Riley v. Bondi*, 145 S. Ct. 2190 (2025) .................................................................... 6

*Scott v. University of Delaware*, 601 F.2d 76 (3d Cir. 1979) ................................ 12, 13

*Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26 (1976).................................. 7, 9, 12

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) ...................................................... 6, 7, 8

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998).................................... 6

*Sullivan v. Chartwell Inv. Partners, LP*, 873 A.2d 710 (Pa. Super. 2005) .................... 22

*Summers v. Earth Island Inst.*, 555 U.S. 488 (2009) ................................................ 8

*Toll Bros., Inc. v. Twp. of Readington*, 555 F.3d 131 (3d Cir. 2009) ......................... 10

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) ........................................ 6, 7, 12

*Warth v. Seldin*, 422 U.S. 490 (1975) ............................................................ 7, 12

*Williams v. Maynard*, No. 23-CV-1320, 2023 WL 3674332 (E.D. Pa. May 25, 2023) ............. 8

*Yaw v. Del. River Basin Comm'n*, 49 F.4th 302 (3d Cir. 2022) .............................6, 11

**Statutes**

28 U.S.C. § 1391(b) ............................................................................... 13, 14

28 U.S.C. 1406(a) ...................................................................................... 14

**Rules**

Federal Rule of Civil Procedure 12(b)(3) ...................................................... 13

Federal Rule of Civil Procedure 12(b)(6) ...................................................... 18

Federal Rule of Civil Procedure 8(a)(2) ........................................................ 18

**Constitutional Provisions**

U.S. CONST. art. III, § 2 ................................................................................ 6

Defendants America PAC, Group America, LLC, and Elon Musk respectfully move to dismiss Plaintiffs' Class Action Complaint (ECF No. 1; "Compl.") under Federal Rules of Civil Procedure 12(b)(1), 12(b)(3), and 12(b)(6). Defendants seek dismissal because: (1) Plaintiffs lack Article III standing, having failed to allege any concrete injury traceable to Defendants' alleged conduct; (2) venue is improper in this District; and, (3) Plaintiffs fail to state a plausible breach of contract or promissory estoppel claim. Given these facial deficiencies in the Complaint, this case should be dismissed in its entirety.

## I.    INTRODUCTION

In October 2024, America PAC, a federally registered political action committee, launched a program inviting registered voters in seven states ("Eligible Voters") to sign a citizen petition supporting the First and Second Amendments to the United States Constitution. Verified Eligible Voters could earn $47 (later $100 in Pennsylvania) for signing the petition. Verified Eligible Voters who referred ("Referrers") other verified Eligible Voters ("Referees") could earn another $47 (later $100 in Pennsylvania) for each verified Referee who signed the petition. Before issuing payment, America PAC used the information in each petition signature to verify that the signer was an Eligible Voter and, for payments exceeding $600, required the payee to provide a signed IRS W-9 form. The program was open to Eligible Voters in Pennsylvania, Arizona, Georgia, Michigan, Nevada, North Carolina, and Wisconsin.

Plaintiffs Anthony Maglietta, Steven Reid, and Jerry Victorious claim they participated in the program and were not paid in full for their efforts. Yet the Complaint offers no concrete information about Plaintiffs' supposed participation. It neither quantifies Plaintiffs' referrals nor alleges that the purported Referees were Eligible Voters who listed a Plaintiff as their Referrer. It does not claim that Plaintiffs submitted W-9s if required. And the purported injuries—unpaid

referral fees—are supported by nothing more than speculative, conclusory statements. Maglietta vaguely asserts he "referred many voters" in Pennsylvania; Reid estimates he is owed "several thousand dollars" for referrals in Michigan and Georgia; and Victorious provides no specifics beyond claiming unpaid referrals in Georgia and elsewhere.

These threadbare allegations, lacking critical factual support, cannot sustain this case. Under Rule 12(b)(1), the Complaint must be dismissed for lack of Article III standing, as Plaintiffs fail to plead a concrete injury traceable to Defendants' conduct. Plaintiffs further lack standing to pursue class claims for signature non-payments, as no Plaintiff alleges that he was not paid for signing the petition. Under Rule 12(b)(3), venue is improper in this District, as only one Plaintiff (Maglietta) has any ties to Pennsylvania, while Reid, Victorious, and America PAC's multistate petition program all lack a substantial connection to this District. Finally, under Rule 12(b)(6), Plaintiffs' breach of contract claim fails for failure to plead performance or breach, and their promissory estoppel claim fails for failure to plead reliance or injustice. These deficiencies, pervasive across the Complaint, warrant dismissal of all claims against all Defendants.

## II.    Factual Background

### A.    America PAC's Citizen Petition Program

Elon Musk founded America PAC, an independent expenditure only political committee registered with the Federal Election Commission. Compl. at 2, ¶ 10; 3, ¶ 13.[1] From October to November 5, 2024, America PAC operated a citizen petition program inviting registered voters in seven states to sign its "Petition in Favor of Free Speech and the Right to Bear Arms" on its website. *Id.* at 3, ¶ 16. America PAC paid $47 (later increased to $100 in Pennsylvania) to each verified Eligible Voter—defined as a registered voter in Pennsylvania, Arizona, Georgia,

---

[1] The paragraphs in the Complaint are numbered 1–31. These paragraph numbers restart at 1 on page 7 of the Complaint. For clarity, this brief cites both page and paragraph numbers.

Michigan, Nevada, North Carolina, or Wisconsin—who signed the petition. *Id.* at 3, ¶ 16; 4, ¶ 19; 5, ¶ 20. Each verified Eligible Voter who signed could earn an additional $47 (later increased to $100 in Pennsylvania) for each verified referral of an Eligible Voter who signed the petition and listed the referrer when doing so. *Id.* at 4, ¶¶ 17–19; 5, ¶ 21. Musk publicized the program through X posts on October 6 and 17, 2024. *Id.* at 4–5, ¶¶ 19–20.

Plaintiffs do not allege any written agreement with any Defendant. *Id.* at 3–6, ¶¶ 16–30. The Complaint does, however, cite America PAC's website, which outlines the program terms:

> SIGNER & REFERRER PAYMENT PROGRAMS 10/17 - 11/05 If you signed this petition while a $47 or $100 payment offer was active and met the criteria of state, voter registration status, and/or confirmed referrals, your payment is being processed. Due to volume, all payments are expected to be issued on or before Nov. 30, 2024. Before payment is made, America PAC will verify the accuracy of all information of the referrer and referee. Payments of $600 or more will require the referrer to provide a signed IRS W-9 so an IRS 1099 can be issued. To be eligible, both the referrer and the petition signer must be registered voters of Arizona, Michigan, Georgia, Nevada, North Carolina, Pennsylvania, or Wisconsin.

*Id.* at 1, ¶ 1 (citing ECF No. 1-1, Ex. A). These terms make clear that, for each referral payment: (1) the Referee must be an Eligible Voter; (2) the Referee must list the Referrer when they sign the petition;[2] (3) for payments over $600, the Referrer must submit a signed IRS W-9; and (4) America PAC will verify all information before issuing payment. *Id.*; Compl. at 5, ¶ 22.

### B.    Plaintiffs' Alleged Participation in the Citizen Petition Program

Plaintiffs Anthony Maglietta, Steven Reid, and Jerry Victorious state that they are registered voters residing in Lancaster, Pennsylvania; Las Vegas, Nevada; and Lilburn, Georgia, respectively. *Id.* at 2–3, ¶¶ 6–8.

---

[2] An email America PAC sent to petition signers also makes this explicit, stating "You will receive a check for $47 for each eligible petition signer who lists your email address in the referrer section of their petition signature." Compl. at 5, ¶ 22.

3

Maglietta alleges he "referred many voters in Pennsylvania to sign the America PAC petition" but was "not paid the full promised amounts for these referrals." *Id*. at 6, ¶¶ 25–26. He does not specify how many referrals he made, indicate whether he referred Eligible Voters who listed Maglietta as their Referrer, or provide any information about how much he *was* paid and is still owed to achieve "full" payment. *Id*. Maglietta also does not allege that he submitted a signed IRS W-9 form, nor does he provide any factual basis to support a finding that he was not paid for referrals that met the program's requirements. *Id*. Maglietta claims the alleged nonpayment caused him "significant emotional distress" and "financial hardship," but he does not offer facts supporting his expectation of payment, nor does he list facts to substantiate any finding of "distress" or "hardship." *Id*. at 6, ¶ 26.

Reid alleges he worked as a canvasser for America PAC in Michigan and Georgia, where he "referred many voters to sign the America PAC petition." *Id*. at 6, ¶ 27. He claims he was "not paid the full promised amounts for these referrals," estimating "at least several thousand dollars" owed, despite "multiple attempts to receive payment." *Id*. at 6, ¶¶ 27–28. Reid does not quantify his referrals, confirm whether referred individuals were Eligible Voters who listed Reid as their Referrer, or allege W-9 submission. *Id*. He provides no details about the timing, nature, or substance of his alleged "attempts to receive payment," nor does he offer any factual matter to substantiate his "estimate" that he is owed "at least several thousand dollars." *Id*. Reid claims the alleged nonpayment caused "financial hardship" and "emotional distress," but, like Maglietta, he offers no factual allegations which might support these conclusory allegations. *Id*. at 6, ¶ 28.

Victorious says he "referred many voters in Georgia and other swing states to sign the America PAC petition" but was "not paid the full promised amounts for these referrals." *Id*. at 6, ¶¶ 29–30. He does not quantify—even in general terms—the number of referrals or amount he

claims he is owed, state that the referred individuals were Eligible Voters who listed Victorious as their Referrer or allege that he submitted a W-9. *Id.* Nor does he provide any basis for his nonpayment claim or allege any attempts to seek payment. *Id.* Victorious claims the alleged nonpayment caused "significant emotional distress" and "financial harm," but he, too, offers no facts to support such a conclusion. *Id.* at 6, ¶ 30.

While Plaintiffs seek to represent a class of petition signers who are purportedly owed payment for their petition signatures, no Plaintiff alleges that *he* is owed payment for his own petition signature. *Id.* at 6–7, ¶¶ 25–31.

## III.    ARGUMENT AND AUTHORITY

"Standing is a 'threshold jurisdictional requirement,'" and courts have a "bedrock obligation to examine [their] own subject matter jurisdiction." *George v. Rushmore Serv. Ctr., LLC*, 114 F.4th 226, 234 (3d Cir. 2024) (quoting *Pub. Int. Rsch. Grp. of N.J., Inc. v. Magnesium Elektron, Inc.*, 123 F.3d 111, 117 (3d Cir. 1997)). Because standing is essential to federal jurisdiction, it is "a threshold question in every federal case" and cannot be waived or assumed. *Residences at Bay Point Condo. Ass'n, Inc. v. Standard Fire Ins. Co.*, 641 F. App'x 181, 183 (3d Cir. 2016). Venue is also a threshold issue, as a court must ensure the case is brought in an appropriate forum before addressing substantive claims. *Cumberland Truck Equip. Co. v. Detroit Diesel Corp.*, 401 F. Supp. 2d 415, 419-20 (E.D. Pa. 2005); *see also Madotto v. Rosman*, No. CIV.A. 98-3221, 1998 WL 961390, at *4 (E.D. Pa. Dec. 10, 1998). When a motion under Federal Rule of Civil Procedure 12 raises multiple grounds, courts generally address the 12(b)(1) challenge first, as dismissal for lack of subject-matter jurisdiction moots all other defenses, followed by the 12(b)(3) venue challenge, before considering the adequacy of merits-related allegations under 12(b)(6). *See Leroy v. Great W. United Corp.*, 443 U.S. 173, 180 (1979) ("The question of

5

personal jurisdiction, which goes to the court's power to exercise control over parties, is typically decided in advance of venue, which is primarily a matter of choosing a convenient forum."); *see also, e.g.*, *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998), *abrogated on other grounds*, *Riley v. Bondi*, 145 S. Ct. 2190 (2025); *In re Corestates Trust Fee Litig.*, 837 F. Supp. 104, 105 (E.D. Pa. 1993), *aff'd*, 39 F.3d 61 (3d Cir. 1994). Accordingly, Defendants address their 12(b)(1) standing arguments first, followed by their 12(b)(3) venue arguments, before raising their 12(b)(6) claims.

### A.    This case should be dismissed under Rule 12(b)(1) for lack of subject-matter jurisdiction.

#### 1.    Standard for dismissal under Rule 12(b)(1).

Federal Rule of Civil Procedure 12(b)(1) governs motions to dismiss for lack of subject-matter jurisdiction. Federal courts lack authority to "publicly opine on every legal question" or "exercise general legal oversight… of private entities." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423–24 (2021). Article III of the United States Constitution limits jurisdiction to actual "cases" and "controversies." U.S. CONST. art. III, § 2. Standing, rooted in this case-or-controversy requirement, requires each plaintiff to have a personal stake in the dispute. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Plaintiffs bear the burden to establish standing, and failure to allege its elements deprives federal courts of jurisdiction. *Finkelman v. Nat'l Football League*, 810 F.3d 187, 194 (3d Cir. 2016); *Yaw v. Del. River Basin Comm'n*, 49 F.4th 302, 311 (3d Cir. 2022) ("The plaintiff…bears the burden of establishing standing and must clearly… allege facts demonstrating each element.") (citation omitted) (cleaned up).

The "irreducible constitutional minimum" of standing under Article III requires a plaintiff to plead "(1) injury-in-fact, which is an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) a causal

connection between the injury and the conduct complained of; and (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Danvers Motor Co., Inc. v. Ford Motor Co.*, 432 F.3d 286, 290–91 (3d Cir. 2005) (citation omitted); *see also, e.g.*, *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992); *Friends of the Earth, Inc. v. Laidlaw Env'tl Servs., Inc.*, 528 U.S. 167, 180–81 (2000). At the pleading stage, plaintiffs must clearly allege facts demonstrating each element. *Spokeo*, 578 U.S. at 338. Without a cognizable injury caused by the defendant and remediable by the court, no case or controversy exists, and the case must be dismissed for lack of subject-matter jurisdiction. *TransUnion*, 594 U.S. at 423.

That Plaintiffs bring this case as a putative class action does not impact the threshold showing required to withstand a 12(b)(1) motion. "That a suit may be a class action [] adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that *they personally* have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976) (quoting *Warth v. Seldin*, 422 U.S. 490, 502 (1975) (emphasis added); *see also, e.g. TransUnion*, 594 U.S. at 431 (class plaintiffs must "demonstrate standing for each claim that they press and for each form of relief that they seek."). If no named plaintiff establishes the requisite case or controversy, none may seek relief for themselves or the class. *Id.*; *see also, e.g.*, *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974).

### 2.    Plaintiffs lack standing because their vague allegations fail to establish an injury-in-fact, traceability, or redressability.

To establish Article III standing, a plaintiff must plead a concrete, particularized injury-in-fact fairly traceable to the defendant's challenged conduct. *Lujan*, 504 U.S. at 560–61; *Spokeo*, 578 U.S. at 338. An injury is concrete and particularized only if it affects the plaintiff personally and is actual or imminent, not speculative or hypothetical. *Clapper v. Amnesty Int'l USA*, 568 U.S.

398, 409 (2013); *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). Vague or conclusory allegations, lacking specific facts, cannot establish a legally protected interest. *Spokeo*, 578 U.S. at 338. An injury is not traceable to a defendant unless the factual allegations support a plausible causal connection between the injury and the defendant's actions (as opposed to the action or inaction of the plaintiff or a third-party). *Finkelman*, 810 F.3d at 193–94; *Williams v. Maynard*, No. 23-CV-1320, 2023 WL 3674332, at *2 (E.D. Pa. May 25, 2023).

Vague and conclusory allegations, lacking specific facts to show entitlement to relief, cannot establish standing. In *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, a third-party payor alleged it paid for two Rebetol prescriptions for off-label uses due to Schering's illegal marketing, but did not plead facts showing that the marketing scheme influenced the prescribing physicians. 678 F.3d 235, 247–48 (3d Cir. 2012). Similarly, a patient alleged her physician prescribed Rebetol and PEG-Intron due to a "phony" clinical trial and marketing, but her allegations were conclusory, lacking specific facts tying the prescription to Schering's actions, especially since the clinical trial involved a different drug. *Id*. at 248–53. The Third Circuit held that both plaintiffs lacked Article III standing because their vague allegations did not "affirmatively and plausibly" allege a causal link between their injuries (payments for ineffective drugs) and Schering's conduct, rendering the injuries speculative and not traceable. *Id*. at 244, 247, 250 (citation omitted). The court emphasized that—for Article III standing—plaintiffs must plead facts demonstrating a right to relief, not merely facts consistent with such a right. *Id*. at 244.

This principle applies with even greater force in cases involving structured programs with explicit terms, where plaintiffs' failure to plead compliance with those terms renders injury allegations speculative and not traceable to the defendant. In *Finkelman v. National Football League*, the NFL operated a ticket lottery for the 2014 Super Bowl, allocating 1% of tickets to fans

8

of non-participating teams, requiring entrants to submit applications during a designated period. 810 F.3d at 190–91. Finkelman, wanting to attend, chose not to enter the lottery and instead bought tickets on the secondary resale market at a higher price. *Id*. at 191–92. He alleged the NFL's ticket allocation policy, which limited face-value tickets, caused inflated resale prices, injuring him. *Id*. The Third Circuit held that Finkelman lacked standing because he did not plead entry into the lottery, making his claimed injury—higher prices—speculative and attributable to his own choice, not the NFL's policy. *Id*. at 197–98.

Plaintiffs have not pled injury-in-fact. Plaintiffs have not pled a concrete, particularized injury-in-fact because they allege no facts to support the conclusion that they have not been paid for *valid* referrals. No Plaintiff specifies how many voters he referred or claims that he has not been paid for referring *Eligible Voters* who listed the Plaintiff when signing the petition. *Cf.* Compl. at 6, ¶¶ 25–26 (Maglietta claiming that he "referred many voters" in Pennsylvania); 27–28 (Reid alleging that he was a canvasser in Michigan and Georgia and estimating that he is owed "several thousand dollars"); 29–30 (Victorious claiming to have made referrals in Georgia and other states, but providing no further details). Indeed, even taking the Plaintiffs' allegations as true, they give no basis upon which one could conclude that any alleged nonpayment is connected to referring someone who (1) was, in fact, an Eligible Voter (*i.e.*, registered to vote in one of the seven eligible states); or (2) listed any Plaintiff as their Referrer when they signed the petition. Consequently, Plaintiffs' effort to assert a "legally protected interest" in any unpaid referral payments is—at most— "conjectural or hypothetical" and therefore insufficient to satisfy Article III. *See, e.g.*, *Danvers*, 432 F.3d at 290–91; *In re Schering*, 678 F.3d at 247–48; *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. at 44 (explaining that "unadorned speculation will not suffice to invoke the federal judicial power.").

9

Plaintiffs have not pled causation. Plaintiffs' failure to plead facts establishing referrals that were eligible for payment also forecloses a finding of causation (*i.e.*, traceability). To plead causation, the "plaintiff must establish that the defendant's challenged actions, *and not the actions of some third party*, caused the plaintiff's injury." *Toll Bros., Inc. v. Twp. of Readington*, 555 F.3d 131, 142 (3d Cir. 2009) (emphasis added); *see also, e.g.*, *Finkelman*, 810 F.3d at 197–98. As just discussed, Plaintiffs do not claim that their purported referees (1) were Eligible Voters; or, (2) listed Plaintiffs when signing the petition. Nor do Plaintiffs claim to have provided W-9 forms—all of which America PAC explicitly required for referrals to be payable. Compl. at 3–5, ¶¶ 16, 21; 6, ¶¶ 25–30. As in *Finkelman*, where the plaintiff's failure to enter the ticket lottery defeated standing, Plaintiffs' failure to allege that they have made referrals that would have been payable under the petition program forecloses a finding that their alleged injury is traceable to any Defendant. *See, e.g.*, *Finkelman*, 810 F.3d at 197–98. Rather, any alleged non-payments would be traceable to (1) Plaintiffs' own inaction (*i.e.*, failure to provide a W-9); or (2) the Referee's failure to sign, ineligibility, or failure to list a Plaintiff as their Referrer.

Plaintiffs have not pled redressability. For the same reasons, Plaintiffs have failed to plead that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Danvers*, 432 F.3d at 291. While Plaintiffs allege that they referred people to sign—and allege that they expected to be paid more for those referrals—they have not pled that the people they referred actually did sign, as eligible registered voters, who listed the Plaintiffs on the petition. As Plaintiffs do not allege that any Defendant was required to pay for such referrals, Plaintiffs have not pled any injury that the Court can redress. *Id.*

Because Plaintiffs' vague allegations and failure to allege valid, payable referrals cannot establish a concrete, traceable injury-in-fact that the Court can likely redress, they lack Article III standing, requiring dismissal under Rule 12(b)(1).

> **3.** **Plaintiffs' claims against Musk and Group America are *particularly* ripe for dismissal because Plaintiffs allege no conduct by these Defendants that relates to America PAC's petition signature or referral payments.**

Plaintiffs' lack of standing is particularly glaring with respect to Defendants Musk and Group America, as Plaintiffs have alleged no conduct by them that relates to their claimed injury (*i.e.*, unpaid signature and referral payments). To survive dismissal under Rule 12(b)(1), plaintiffs must allege specific conduct by *each* defendant causing a concrete, particularized injury. *Lujan*, 504 U.S. at 560–61 (1992). Such traceability demands a direct causal link between the injury and the defendant's actions, not those of others or the plaintiff's failures. *Yaw*, 49 F.4th at 310.

In *Constitution Party of Pennsylvania v. Aichele*, plaintiffs challenged Pennsylvania ballot access laws, suing the Secretary of State, Commissioner of Elections, and Attorney General. 757 F.3d 347 (3d Cir. 2014). The complaint detailed the Secretary's enforcement but only stated that the Attorney General was Pennsylvania's "chief legal and law enforcement officer," and made no allegations regarding her role in the electoral process. *Id*. at 350 n.3. Because the Attorney General had no role in the allegedly injurious conduct, the Court dismissed the Attorney General from the case. *Id*.

Here, the Complaint contains no allegations tying Musk or Group America to Plaintiffs' claimed nonpayment injury. Musk is named only as America PAC's founder who publicized the petition via X posts on October 6 and 17, 2024. Compl. at 3–5, ¶¶ 13, 19–20. There is no allegation that he has any role in payments for petition signatures or referrals. The allegations against Group America are even more threadbare: the only allegation in the entire Complaint against Group

America is that it a "corporate entity with a principal place of business in Austin, Texas." Compl. at 3, ¶ 11. In *Constitution Party* claims against the Attorney General failed because she lacked any role in the challenged process. So too here, where Musk and Group America have no connection whatsoever to America PAC's petition referral payments. Thus, Plaintiffs have not established standing to sue those Defendants, and they should be dismissed from this case.

> ### 4.  Because Plaintiffs do not allege that they were not paid for signing America PAC's petition, they lack standing to sue on behalf of such a class.

To have standing to represent a class, any class representative must be part of that class and "possess the same interest and suffer the same injury" as the class members. *E. Tex. Motor Freight Sys. Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977). Accordingly, class plaintiffs must "demonstrate standing for each claim that they press and for each form of relief that they seek." *TransUnion*, 594 U.S. at 431. A named plaintiff who has not suffered the specific injury alleged by the class lacks standing to pursue that claim on behalf of the class, as standing is not dispensed in gross and must be established for each distinct injury claimed. *Simon*, 426 U.S. at 40, n. 20 (quoting *Warth*, 422 U.S. at 502); *O'Shea*, 414 U.S. at 494 ("if none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class.") (citation omitted).

In *Scott v. University of Delaware*, an assistant professor sued the University for racial discrimination in faculty hiring and contract renewal, seeking to represent a class of applicants denied faculty positions due to a Ph.D. requirement and faculty members discriminated against in promotions. 601 F.2d 76, 78–79, 82 (3d Cir. 1979), *abrogated on other grounds*, *EF Operating Corp. v. Am. Bldgs.*, 993 F.2d 1046 (3d Cir. 1993). The assistant professor, hired with a Ph.D. and a premium salary, alleged discrimination only in his contract non-renewal, not in hiring, claiming

the applicant subclass was injured by the University's discriminatory hiring policies. *Id.* at 86. The Third Circuit held that Scott lacked standing to represent the applicant subclass because he did not suffer their injury—discrimination in hiring—since he was hired and benefited from the Ph.D. requirement he challenged. *Id.* at 86–87.

Plaintiffs lack standing to represent a class of Eligible Voters who were not paid for signing the petition because Plaintiffs allege only nonpayment for making referrals. They do not claim that they signed the petition but were not paid for doing so and thus do not share this putative class's claimed injury. The Complaint seeks to certify a class of "voters in swing states who signed the petition and/or referred other voters to sign and were not paid for their signatures and/or referrals." Compl. at 7, ¶ 32. Because no Plaintiff alleges that he himself was not paid for signing the petition, Plaintiffs lack standing to sue on behalf of such a class.

As in *Scott*, where the plaintiff lacked standing to represent a class claiming hiring discrimination because he was hired and alleged only non-renewal discrimination, Plaintiffs here cannot represent a class claiming signature nonpayment because they allege only referral nonpayment. 601 F.2d at 86–87. Their failure to plead personalized injury from unpaid signatures means they lack the "personal stake" required to represent that portion of the class. The distinct nature of the signature nonpayment injury—tied to signing the petition rather than referring others—precludes standing, as Article III requires named plaintiffs to share the class's injury for each claim. Because Plaintiffs do not allege that they personally suffered a signature nonpayment injury, they lack standing to pursue that claim on behalf of a putative class.

**B.**      **This case should be dismissed under Rule 12(b)(3) for improper venue.**

         **1.**      **Standard for dismissal under rule 12(b)(3).**

Federal Rule of Civil Procedure 12(b)(3) authorizes dismissal of a case filed in an improper venue. Venue in federal court is governed by 28 U.S.C. § 1391(b), which provides that a civil action may be brought in: (1) a judicial district where any defendant resides, if all defendants reside in the same state; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated; or, (3) if there is no district in which the action may otherwise be brought, any judicial district where any defendant is subject to personal jurisdiction. 28 U.S.C. § 1391(b).

Plaintiffs bear the burden of alleging facts to support venue in this District. *See Gillette v. Owens-Illinois, Inc.*, No. CIV. A. 85-3506, 1985 WL 3412, at *1 (E.D. Pa. Oct. 30, 1985) ("Plaintiff[s] bear[] the burden of establishing that venue is proper in this district…once venue is raised."). "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

> **2.**      **Venue is improper in the Eastern District of Pennsylvania because a substantial part of the events giving rise to the claims did not occur in this district.**

Venue under 28 U.S.C. § 1391(b)(2) is proper only where a "substantial part of the events or omissions giving rise to the claim occurred." *Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 293 (3d Cir. 1994). The Third Circuit has emphasized that "substantial" means the events in the chosen district must have a significant connection to the plaintiff's claims, not merely tangential or incidental contacts. *Id*. at 294–95; *see also Nebroskie v. Ameriline Trucking Inc.,* No. CV 18-1070, 2019 WL 883844, at *3 (E.D. Pa. Feb. 22, 2019) ("[e]ven if some events that gave rise to a claim occurred in a district, events or omissions that might only have some tangential connection with the dispute in litigation are not enough.") (citations omitted) (cleaned up). In class

14

actions, courts focus on the events underlying the named plaintiffs' claims, not the proposed class's activities. *Great Seal Moorish Sci. Temple of Am., Inc. v. New Jersey*, No. CIV.A. 05-CV-345, 2005 WL 2396311, at *2 (E.D. Pa. Sept. 28, 2005) (dismissing class action for improper venue); *Hardwick v. Consumer Guardian Specialists, LLC*, No. 2:20-CV-00060, 2022 WL 669212, at *1 (W.D. Pa. Mar. 7, 2022).

Even if a plaintiff suffers harm within a district, venue is improper if a substantial part of the alleged conduct occurred outside the state. In *Cottman Transmission Systems v. Martino*, a Pennsylvania-based franchisor sued a Michigan resident and his Michigan corporation in the Eastern District of Pennsylvania alleging that the resident breached a franchise agreement by failing to pay license fees, misused its trademarks after termination, and operated a competing transmission repair business in Michigan. 36 F.3d at 291-94. The franchisor claimed venue was proper because it received payments in Pennsylvania, prepared advertisements there, and expected the resident to return materials to Pennsylvania. *Id*. at 293, 295. The district court upheld venue, citing a forum selection clause and the franchisor's Pennsylvania operations, but the Third Circuit vacated the judgment, holding that venue was improper because the substantial events—contract execution, performance, nonpayment, and trademark misuse—occurred in Michigan and the franchisor's Pennsylvania-based activities, like receiving payments or preparing advertisements, were tangential. *Id*.

Venue is particularly improper where allegations concern a multi-state operation and the key events occur outside the forum. In *Cumberland Truck Equipment Co. v. Detroit Diesel Corp.*, truck dealers sued Detroit Diesel Corporation and its distributors in the Eastern District of Pennsylvania, alleging antitrust violations like conspiracy and price fixing. 401 F. Supp. 2d at 417–18. The defendants, based in Michigan and other states, were not incorporated in Pennsylvania and

15

lacked a presence there. *Id*. at 419–20. The plaintiffs, some Pennsylvania-based, claimed the defendants' termination of dealership agreements caused harm in Pennsylvania. *Id*. at 417. The court found venue improper under the Clayton Act and 28 U.S.C. § 1391(b), as the substantial events—contract terminations and related activities—occurred in Michigan, where Detroit Diesel was headquartered. *Id*. at 419–23. The plaintiffs' Pennsylvania residence and receipt of payments there were insufficient to support venue, as the defendants' conduct lacked a significant Pennsylvania nexus. *Id*. at 425.

In class actions, a single plaintiff's residence in the forum does not establish venue when the claims arise elsewhere. In *In re Asbestos School Litigation*, a South Carolina plaintiff sued Kaiser Gypsum, a Washington corporation with its principal place of business in California, in the Eastern District of Pennsylvania for asbestos-related claims. No. 83-0268, 1990 WL 20222, at *1 (E.D. Pa. Mar. 5, 1990). The claims stemmed from asbestos installations in South Carolina buildings between 1953 and 1966. *Id*. Kaiser had conducted business in Pennsylvania from 1964 to 1978 but not when the suit was filed in 1983. *Id*. The plaintiff argued venue was proper due to Kaiser's past Pennsylvania activities, but the court disagreed, finding no substantial events in Pennsylvania at the time of filing. *Id*. at *2.

The Eastern District of Pennsylvania is an improper venue for this action because the substantial events giving rise to Plaintiffs' breach of contract and promissory estoppel claims— America PAC's administration of the petition program and its alleged failure to issue referral payments—occurred in Texas, not Pennsylvania. Plaintiffs allege that Defendants offered $47 (later $100 in Pennsylvania) to registered voters in seven states for signing America PAC's petition and referring other such voters to do the same, but failed to pay Plaintiffs Maglietta, Reid, and Victorious "in full" for their referrals. Compl. at 3, 6, ¶¶ 16–17, 24–30. The critical alleged

16

omission—nonpayment of referral fees—stems from America PAC's payment processing and verification, which took place in Texas, where America PAC and Group America, LLC are based, and where Musk has a residence (assuming arguendo that Group America, LLC and Musk are even proper defendants). *Id*. at 2, ¶ 9; 3, ¶¶ 11–12; ECF No. 1, Ex. A (program terms noting verification by America PAC). Just as in *Cottman*, where the Third Circuit held that the defendant's failure to pay fees in Michigan, not the plaintiff's non-receipt in Pennsylvania, determined venue, the alleged failure to issue payments occurred in Texas, not Pennsylvania. 36 F.3d at 295.

Moreover, the Complaint's assertion that "many of Defendants' interactions with Plaintiffs and Class Members occurred or arose out of this District," Compl. at 3, ¶ 15, is too conclusory to establish that "substantial part of the events or omissions giving rise to the claim occurred" in this District. Of the three named Plaintiffs, only Maglietta resides in Pennsylvania and Defendant Musk's X posts, cited as publicity efforts, were nationwide, not Pennsylvania-specific, and do not tie the claims to this District. *Id*. at 4–5, ¶¶ 19–20.

To the extent that Plaintiffs argue that Maglietta's Pennsylvania referrals or presence there establish venue, the law is clear that the location of the *defendant's* conduct—not a plaintiff's activities or alleged injury—determines venue. *See Cottman*, 36 F.3d at 295; *Cumberland*, 401 F. Supp. 2d at 425. As America PAC's petition terms required verification in Texas, the substantial events occurred there. If this case is to proceed at all, it should be transferred to the Western District of Texas. 28 U.S.C. § 1406(a).

Venue is improper in the Eastern District of Pennsylvania because the substantial events giving rise to Plaintiffs' claims—program administration and payment processing—occurred in Texas, not this District. Accordingly, this case should be dismissed under Rule 12(b)(3) or transferred to the Western District of Texas.

17

**C.**    **This case should be dismissed under Rule 12(b)(6) for failure to state a plausible claim.**

**1.**    **Standard for dismissal under Rule 12(b)(6).**

Federal Rule of Civil Procedure 12(b)(6) mandates dismissal when a complaint fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation," and "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted) (cleaned up). Instead, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* Crucially, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* (citations omitted).

Courts in this Circuit apply this standard in a three-step framework: (1) identify the elements of the claim; (2) disregard allegations that are mere conclusions; and, (3) assume well-pleaded factual allegations are true and determine if they plausibly give rise to relief. *See Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). Importantly, mere restatements of the elements of a claim are not entitled to the assumption of truth. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) (citation omitted) (cleaned up).

**2.**    **Plaintiffs fail to state a plausible breach of contract claim.**

Plaintiffs' breach of contract claim must be dismissed under Rule 12(b)(6) because they fail to plead their own performance or Defendants' breach, essential elements of the claim. A breach of contract claim under Pennsylvania law requires: (1) the existence of a contract; (2) a

breach of that contract; (3) damages; and (4) the plaintiff's performance of their own contractual

obligations. *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007). The plaintiff bears the

burden of alleging facts showing each element. *Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc.*,

247 F.3d 79, 102 (3d Cir. 2001). Conclusory allegations, without specific facts, are insufficient to

survive a Rule 12(b)(6) motion. *See, e.g.*, *Iqbal*, 556 U.S. at 678; *Cephas v. George W. Hill Corr.*

*Facility*, No. CIV.A. 09-6014, 2011 WL 2695311, at *3 (E.D. Pa. July 12, 2011) (dismissing claim

based on allegedly impermissible withdrawals from plaintiff's account where plaintiff "d[id] not

make any specific factual allegations about how much money was withdrawn from his inmate

account, when the withdrawals occurred or why the withdrawals were improper;" concluding that,

"absent such allegations, the defendants have not been given fair notice of what the claim is and

the grounds upon which it rests.") (quoting *Twombly*, 550 U.S. at 555; *Conley v. Gibson*, 355 U.S.

41, 47 (1957)) (cleaned up).

A breach of contract claim fails when the plaintiff does not allege specific facts showing

their performance of contractual obligations. In *Frederico v. Home Depot*, Janelle Frederico rented

a flatbed truck from a Home Depot store in New Jersey under a Vehicle Delivery Agreement,

which required her to return the truck by 7:38 PM on August 6, 2005, or before the store closed at

10:00 PM, with a rental rate of $19 for the first 75 minutes and $5 for each additional 15 minutes.

507 F.3d at 191–92. Frederico alleged she attempted to return the truck on August 6 but was told

the rental department was closed and to return it the next morning, resulting in $287.14 in late fees.

*Id*. at 192. She sued Home Depot for breach of contract, claiming the refusal to accept the return

breached the agreement. *Id*. The Third Circuit affirmed the district court's dismissal under Rule

12(b)(6), finding Frederico's complaint deficient because it did not specify the time of her

attempted return, making it impossible to determine if she complied with the agreement's terms

(*e.g.*, returning by 7:38 PM or before 10:00 PM) or if Home Depot's refusal constituted a breach. *Id*. at 204. The court reasoned that without factual details showing her performance or Home Depot's breach, the allegations were too vague to meet *Twombly*'s plausibility standard, as they failed to provide fair notice of the claim. *Id*.

A breach of contract claim also fails when the plaintiff does not plead facts showing a breach, particularly where contractual obligations are contingent on conditions precedent. In *Robert Wood Johnson University Hospital at Hamilton, Inc. v. SMX Capital, Inc.*, a hospital entered a Solar Power Purchase Agreement with SMX Capital under which SMX would finance, construct, and operate a solar facility on the hospital's leased land, with the hospital purchasing the generated energy at a fixed rate. 2013 WL 4510005, at *1 (D.N.J. Aug. 26, 2013). The agreement's obligations were conditioned on five unmet conditions precedent, including SMX obtaining tax incentives and governmental approvals. *Id*. at *1–2. The hospital alleged SMX breached by failing to make commercially reasonable efforts to satisfy these conditions, leading to the project's termination. *Id*. at *3. The District of New Jersey dismissed the claim under Rule 12(b)(6), finding the hospital's allegations conclusory because they lacked specific facts about what efforts SMX made or failed to make, or how those efforts constituted a breach. *Id*. at *4–5. The court further held that the unmet conditions precedent meant no binding obligations arose, as the hospital assumed the risk of nonoccurrence under the contract's terms. *Id*. at *5.

Plaintiffs' breach of contract claim fails because they have not pled facts showing that they fulfilled the America PAC program's conditions, rendering it implausible that they were entitled to any unpaid referral payments. Specifically, the Complaint asserts that America PAC offered $47 (later $100 in Pennsylvania) per eligible signature and referral, forming a contract that Plaintiffs accepted by referring voters to sign America PAC's petition. Compl. at 9–10, ¶¶ 15–18.

20

Yet, the program imposed clear conditions: each Referee must be a registered voter in one of the seven eligible states and list the Referrer when signing the petition; America PAC must be able to validate each referral based on the information in the petition signature; and, each Referrer who earned $600 or more must submit a signed IRS W-9 form. *Id.* at 3–5, ¶¶ 16, 21; ECF No. 1, Ex. A. Like the plaintiff in Frederico—who failed to say when she returned the truck to show compliance with the agreement—Maglietta, Reid, and Victorious offer only vague assertions of "referring many voters" without specifying critical details (*i.e.*, how many referrals they made, whether those referrals involved eligible voters who identified a Plaintiff as their Referrer, or whether Plaintiffs provided the required W-9 forms). *Id.* at 6, ¶¶ 25–30; 507 F.3d at 204.

Moreover, the Complaint's allegations of breach are conclusory and fail to demonstrate that any nonpayment violated the petition program's terms, especially given the conditional nature of the payment obligation alleged here. America PAC's payment was contingent on Plaintiffs submitting valid referrals meeting the program's criteria. Compl. at 3–5, ¶¶ 16, 21. The Complaint's bare assertion that Defendants "failed to pay in full" for referrals lacks details about which referrals were unpaid, whether they were verified as eligible, or how the lack of payment violated any purported contract. *Id.* at 6, ¶¶ 25–30. Compounding this, Plaintiffs admit they received some payments for referrals, indicating that the alleged contract was indeed honored for submissions that complied with the program's explicit requirements. *Id*. at 6, ¶¶ 27–28. This further undermines Plaintiffs' allegation of breach, as they do not allege facts distinguishing nonpayment for ineligible referrals from eligible referrals that were paid, or supporting a finding that Plaintiffs were denied payment for referrals that met the program's explicit requirements.

Plaintiffs' breach of contract claim must be dismissed under Rule 12(b)(6) because their vague allegations fail to establish their performance of America PAC's program terms or Defendants' breach for nonpayment of valid referrals.

### 3.    Plaintiffs fail to state a plausible promissory estoppel claim.

Under Pennsylvania law, a promissory estoppel claim requires: (1) the promisor made a promise that it should have reasonably expected would induce action or forbearance on the part of the promisee; (2) the promisee actually took action or refrained from taking action in reliance on the promise; and (3) an injustice that can only be avoided by enforcing the promise. *Sullivan v. Chartwell Inv. Partners, LP*, 873 A.2d 710, 717–18 (Pa. Super. 2005). The plaintiff must plead specific facts showing each element, and vague or conclusory allegations of reliance or injustice are insufficient to survive a Rule 12(b)(6) motion. *Pandit v. Temple Univ.*, No. CV 24-1475, 2025 WL 388818, at *3 (E.D. Pa. Feb. 4, 2025). Where a promise is conditioned on specific requirements, the plaintiff must allege facts demonstrating compliance with those conditions to establish reasonable reliance. *Massaro Ltd. P'ship (Park W. Two) v. Baker & Taylor Inc.*, 161 F. App'x 185, 188 (3d Cir. 2005).

A promissory estoppel claim fails when the plaintiff does not plead specific facts showing reasonable reliance on a clear and unambiguous promise. *See Engstrom v. John Nuveen & Co., Inc.*, 668 F. Supp. 953, 963 (E.D. Pa. 1987).  In *Engstrom*, an employee sued his employer after his termination, alleging that the company's president made oral promises in 1969 that he would remain employed until "voluntary retirement," receive "excellent treatment" in salaries and bonuses, and be compensated for lost stock investments. *Id.* at 957. Engstrom claimed he relied on these promises by staying employed for 16 years and forgoing other job opportunities, but Nuveen fired him in 1985. *Id.* at 957, 962–63. He asserted a promissory estoppel claim, alleging that his

reliance caused financial harm. *Id*. at 956. The court found in favor of the employer, concluding that the promises were too vague and indefinite and that reliance was unreasonable because Engstrom, a sophisticated businessman, did not seek written confirmation, and no other employees received similar assurances. *Id*. at 963.

Plaintiffs' promissory estoppel claim fails because they have not pled facts showing reasonable reliance on Defendants' promise to pay for petition referrals that did not meet the program's requirements. If one were to assume for the sake of argument that the America PAC petition program constituted an enforceable promise, the terms of that promise were clear: payments of $47 (later $100 in Pennsylvania) would only be issued if: (1) a Referee was a registered voter in Arizona, Georgia, Michigan, Nevada, North Carolina, Pennsylvania, or Wisconsin; (2) the Referee listed the Referrer when they signed the petition; (3) America PAC could verify the status of both Referrer and Referee using the information on the petition; and (4) for payments over $600, the Referrers submitted a signed IRS W-9 form. Compl. at 3–5, ¶¶ 16, 21; ECF No. 1, Ex. A. Maglietta, Reid, and Victorious allege only that they "referred many voters," and do not allege facts which support a finding that any of these other requirements (let alone all of them) were met. Compl. at 6, ¶¶ 25–30. Without allegations confirming compliance with these clear requirements, Plaintiffs cannot plausibly claim they reasonably relied on receiving payment, as reliance is unreasonable when a promise's terms are unmet.

Moreover, Plaintiffs affirmatively allege that they received payment for some referrals. Compl. at 6, ¶¶ 27–28. This supports the conclusion that America PAC issued payment for Plaintiffs' referrals that met the program requirements. This also refutes any suggestion that Plaintiffs could have reasonably relied upon a promise of payment for referrals that *did not* meet those requirements. Neither Plaintiffs' efforts to refer people to the petition nor their receipt of

23

payments for some referrals justify expecting payment for referrals that did not meet the program's requirements. The absence of factual allegations to support a finding of reasonable reliance renders this claim insufficient under Rule 12(b)(6).

Furthermore, no injustice arises from denying payment for referrals that fail to meet the program's terms. Plaintiffs' vague claims of "significant emotional distress" and "financial hardship," Compl. at 6, ¶¶ 26, 28, 30, lack any factual connection to any Defendant's alleged conduct, as they do not allege their unpaid referrals satisfied the requirements of voter eligibility, proper referrer identification, or W-9 submission. Without such allegations, enforcing the promise would not avoid injustice, as Defendants had no obligation to pay for non-compliant referrals.

Because Plaintiffs fail to plead facts showing reasonable reliance or injustice due to non-compliance with the program's terms, their promissory estoppel claim must be dismissed under Rule 12(b)(6).

## IV.    CONCLUSION

Because Plaintiffs have failed to establish Article III standing, have brought this action in an improper venue, and have failed to state a claim for which relief can be granted, Defendants respectfully request that the Court dismiss this case under Federal Rules of Civil Procedure 12(b)(1), 12(b)(3), and 12(b)(6).

Date: July 18, 2025

> */s/ Matthew H. Haverstick*
> Matthew H. Haverstick (No. 85072)
> KLEINBARD LLC
> Three Logan Square, 5th Floor
> 1717 Arch Street
> Philadelphia, PA 19103
> Phone: (215) 568-2000
> Fax: (215) 568-0140
> mhaverstick@kleinbard.com
>
> */s/ Anne Marie Mackin*
> Chris K. Gober*
> Texas State Bar No. 24048499

24

Andy Taylor*
Texas State Bar No. 19727600
Anne Marie Mackin*
Texas State Bar No. 24078898
Jesse Vazquez*
Florida State Bar No.1013573
Lex Politica PLLC
#129 7415 SW Parkway
Building 6, Suite 500
Austin, TX 78735
Telephone: (512) 354-1785
cgober@lexpolitica.com
ataylor@andytaylorlaw.com
amackin@lexpolitica.com
jvazquez@lexpolitica.com

**Attorneys for Defendants**

*Admitted* pro hac vice

25