## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANTHONY MAGLIETTA, STEVEN REID, and JERRY VICTORIOUS, individually and on behalf of all others similarly situated,<br><br>       Plaintiffs,<br><br>   v.<br><br>AMERICA PAC, GROUP AMERICA, LLC, and ELON MUSK,<br><br>       Defendants. | Case No. 5:25-cv-02364-WB |

## PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANTS' <u>MOTION TO DISMISS THE COMPLAINT</u>

# Contents

I.      Introduction ................................................................................................ 1

II.     Background .................................................................................................. 1

III.    Legal Standard ............................................................................................ 2

IV.     Argument .................................................................................................... 3

      A.      Plaintiffs Satisfy the Requirements for Standing .................................... 3

            1.      Plaintiffs suffered an injury-in-fact. ................................................ 3

            2.      Plaintiffs' injuries are traceable to Defendants' wrongdoing. .................... 4

            3.      Plaintiffs can obtain redress through an award of damages. ...................... 5

      B.      Plaintiffs Plausibly Allege Their Entitlement to Payment ....................... 5

            1.      Defendants ignore Federal Rule of Civil Procedure 9(c). ........................... 6

            2.      Defendants overstate the general pleading standard for standing. .............. 7

            3.      The Court can infer that Plaintiffs satisfied any payment conditions. ......... 7

      C.      Defendants' Roles Are Alleged and Will Be Established in Discovery ................ 8

      D.      Plaintiffs State a Claim for Breach of Contract ...................................... 9

      E.      Plaintiffs State a Claim for Promissory Estoppel ................................. 10

      F.      If Needed, Plaintiffs Can Amend ....................................................... 11

      G.      Venue is Proper ............................................................................... 12

V.      Conclusion ................................................................................................ 14

## TABLE OF AUTHORITIES

### CASES

*Negron v. Progressive Cas. Ins. Co.*,
    2016 WL 796888 (D.N.J. Mar. 1, 2016)....................................................................... 8

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).......................................................................................................... 2

*Blackstone v. Trans Union, LLC*,
    2023 WL 4671354 (E.D. Pa. July 19, 2023).................................................................. 12

*Cardmone v. Univ. of Pittsburgh*,
    384 A.2d 1228 (Pa. Sup. Ct. 1978)................................................................................ 10

*Carlson v. Arnot-Ogden Mem'l Hosp.*,
    918 F.2d 411 (3d Cir. 1990)........................................................................................... 10

*Cottman Transmission Sys., Inc. v. Martino*,
    36 F.3d 291 (3d Cir. 1994).............................................................................................. 13

*Danvers Motor Co. v. Ford Motor Co.*,
    432 F.3d 286 (3d Cir. 2005).............................................................................................. 4

*Finkelman v. National Football League*,
    810 F.3d 187 (3d Cir. 2016)......................................................................................... 5, 6

*Fischer v. Federal Express Corp.*,
    42 F.4th 366 (3d Cir. 2022) ........................................................................................... 14

*Foglia v. Renal Ventures Mgmt., LLC*,
    754 F.3d 153 (3d Cir. 2014).............................................................................................. 8

*Graham v. Universal Health Serv., Inc.*,
    539 F. Supp. 3d 481 (E.D. Pa. 2021) ............................................................................... 5

*Great W. Min. & Min. Co. v. ADR Options, Inc.*,
    434 F. App'x 83 (3d Cir. 2011) ...................................................................................... 13

*Gress v. Freedom Mortg. Corp.*,
    386 F. Supp. 3d 455 (M.D. Pa. 2019) ............................................................................... 6

*Hedges v. United States*,
    404 F.3d 744 (3d Cir. 2005).............................................................................................. 3

*Hildebrand v. Allegheny Cnty.*,
    757 F.3d 99 (3d Cir. 2014)................................................................................................ 6

*In re Horizon Healthcare Servs. Inc. Data Breach Litig.*,
    846 F.3d 625 (3d Cir. 2017)..................................................................... 7

*Jermax, Inc. v. AK Steel Corp.*,
    2010 WL 2652276 (D.N.J. 2010) ............................................................ 7

*K7 Design Grp., Inc. v. Five Below, Inc.*,
    540 F. Supp. 3d 508 (E.D. Pa. 2021) ..................................................... 11

*Largotta v. Banner Promotions, Inc.*,
    356 F. Supp. 2d 388 (S.D.N.Y. 2005)..................................................... 12

*LaSpina v. SEIU Pennsylvania State Council*,
    985 F.3d 278 (3d Cir. 2021).................................................................. 4, 5

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992)........................................................................... 3, 5, 7

*Lutter v. JNESO*,
    86 F.4th 111 (3d Cir. 2023) ................................................................. 4, 5

*MacKay v. Donovan*,
    747 F. Supp. 2d 496 (E.D. Pa. 2010) ..................................................... 12

*Myers v. Am. Dental Ass'n*,
    695 F.2d 716 (3d Cir. 1982).................................................................. 13

*Park Inn Int'l, L.L.C. v. Mody Enters., Inc.*,
    105 F. Supp. 2d 370 (D.N.J. 2000) ........................................................ 13

*Phillips v. Cnty. of Allegheny*,
    515 F.3d 224 (3d Cir. 2008)................................................................... 11

*Pierce v. Montgomery Cnty. Opportunity Bd., Inc.*,
    884 F. Supp. 965 (E.D. Pa. 1995) ........................................................... 9

*Schrob v. Catterson*,
    948 F.2d 1402 (3d Cir. 1991).................................................................. 3

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 ........................................................................................... 3

*Sylvester v. Depositors Ins. Co.*,
    481 F. Supp. 3d 412 (E.D. Pa. 2020) ....................................................... 4

*Uzuegbunam v. Preczewski*,
    592 U.S. 279 (2021)................................................................................ 5

iii

*Vandergrift v. Pennsauken Sch. Dist.*,
  2017 WL 6566139 (D.N.J. Dec. 22, 2017) ....................................................... 9

*Zaftr Inc. v. Kirk*,
  760 F. Supp. 3d 275 (E.D. Pa. 2024) ............................................................... 4

**STATUTES**

28 U.S.C. § 1391(b)(2) ......................................................................................... 12, 13

**RULES**

Fed. R. Civ. P. 15 ................................................................................................ 11

Fed. R. Civ. P. 9 ............................................................................................. 1, 6, 7, 8

**REGULATIONS**

26 C.F.R. § 31.3406(h)–3 ................................................................................... 10

26 C.F.R. § 1.871–14 ......................................................................................... 10

**OTHER AUTHORITIES**

17A C.J.S. Contracts § 451 ................................................................................ 9

32A Am. Jur. 2d Federal Courts § 1110 ............................................................ 12

32A Am. Jur. 2d Federal Courts § 1111 ............................................................ 13

5 Fed. Prac. & Proc. Civ. § 1235 ...................................................................... 9

## I.    INTRODUCTION

This is a simple case about broken promises. Defendants offered to pay voters in swing states for signing the America PAC petition and for referring others to do the same. Plaintiffs accepted the offer by performing the work and expected to be paid. Defendants took the benefit of their performance but refused to pay. Rather than accept responsibility, they now seek to dismiss this entire case with prejudice.

But the Complaint lays out sufficiently detailed allegations supporting Plaintiffs' claims for breach of contract and promissory estoppel. At this stage, where allegations must be taken as true and all inferences drawn in Plaintiffs' favor, the Court should deny Defendants' Motion to Dismiss.

## II.    BACKGROUND

In October 2024, Defendants America PAC, Group America, LLC, and Elon Musk offered to pay registered voters in certain swing states to sign a petition supporting the First and Second Amendments. (Compl. ¶ 1, ECF No. 1.) The initial payment offer was $47, which was later increased to $100 for voters in Pennsylvania. (Compl. ¶¶ 1, 16.) Defendants also offered the same payment for each successful referral of a registered voter who signed the petition. (Compl. ¶¶ 2, 17.)

This offer was not buried in fine print—it was blasted out across campaign events, social media, and online platforms. (Compl. ¶¶ 18–22.) Elon Musk himself promoted the program on his personal "X" social media account, stating that both the signer and the referrer would be paid $100. (Compl. ¶ 19–20.)

Plaintiffs Anthony Maglietta, Steven Reid, and Jerry Victorious, along with other class members, took Defendants at their word. They signed the petition, referred others to do the same,

and expected to be compensated. (Compl. ¶¶ 3, 23, 25, 27, 29.) But Defendants failed to pay them in full—or at all. (Compl. ¶¶ 24–30.)

Plaintiffs filed this class action on May 8, 2025, asserting claims for breach of contract and promissory estoppel. (Compl. 1.) They allege they relied on Defendants' promises, performed the requested work, and suffered harm when those promises were broken. (Compl. ¶¶ 3–4, 23–30.) Their claims are related to another matter before this Court: *Doe, et al. v. America PAC, et al.*, No. 2:25-cv-01691-WB (E.D. Pa.).[1]

As in *Doe*, Defendants move to dismiss Plaintiffs' Complaint in its entirety, with prejudice. (Defs.' Mot., ECF No. 22.) They recycle the same meritless arguments they raised in *Doe*, adding only the claim that this case belongs in Texas, even though Maglietta lives in Pennsylvania and referred numerous Pennsylvania voters to sign the America PAC petition. Defendants thus concede that venue is proper in *Doe* but improper here, despite the cases being nearly identical.

The Court should deny the motion in full, or if it believes any necessary facts have not been sufficiently alleged, permit Plaintiffs to amend.

III.    **LEGAL STANDARD**

To survive a motion to dismiss, a complaint needs only enough factual matter—taken as true—to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the plaintiff alleges facts that allow the Court to reasonably infer the defendant is liable for the alleged misconduct. *Id.*

---

[1]    *Doe* is limited to Pennsylvania, while this matter encompasses all states in which individuals signed the petition or referred others to sign and were not paid for the signatures.

"In deciding a motion to dismiss, all well-pleaded allegations of the complaint must be taken as true and interpreted in the light most favorable to the plaintiffs, and all inferences must be drawn in favor of them." *Schrob v. Catterson*, 948 F.2d 1402, 1408 (3d Cir. 1991). "A complaint can only be dismissed if it appears to a certainty that no relief could be granted under any set of facts which could be proved." *Id.* (internal citation and quotation marks omitted). "The defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).

## IV.  ARGUMENT

Defendants ask this Court to dismiss the Complaint in full, but they disregard key allegations and distort the law. Plaintiffs allege that they did what Defendants promised to pay for—signing the America PAC petition and referring others to do so—but were not paid. These facts support textbook claims for breach of contract and promissory estoppel. Because the Court must accept these allegations as true and draw all reasonable inferences in Plaintiffs' favor, dismissal is unwarranted.

### A.  Plaintiffs Satisfy the Requirements for Standing

Plaintiffs have standing under Article III if they have "(1) suffered an injury-in-fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (citation omitted). The allegations satisfy all three elements.

#### 1.  *Plaintiffs suffered an injury-in-fact.*

The injury-in-fact element requires Plaintiffs to allege that they have "suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 339 (quoting *Lujan v. Defs. of Wildlife*, 504

3

U.S. 555, 560 (1992)). "Monetary harm is a classic form of injury-in-fact." *Danvers Motor Co. v. Ford Motor Co.*, 432 F.3d 286, 293 (3d Cir. 2005).

It follows, therefore, that in seeking to recover payments owed to them by Defendants under the petition program, Plaintiffs have demonstrated a paradigmatic injury-in-fact. *See Zaftr Inc. v. Kirk*, 760 F. Supp. 3d 275, 283 (E.D. Pa. 2024) (holding that a defendant's failure to make timely settlement payments conferred standing on the plaintiffs); *Sylvester v. Depositors Ins. Co.*, 481 F. Supp. 3d 412, 418 (E.D. Pa. 2020) ("[A] plaintiff seeking to recover money she lost due to the breach of a contract to which she was a party has standing because monetary injuries ordinarily constitute an injury in fact and there is a common law basis for recovery for an injury arising from a breach of contract.")

"Additionally, the potential award of nominal damages alone is sufficient to confer standing" upon Plaintiffs, as Pennsylvania law "entitles the injured party to at least nominal damages for a breach of contract claim." *Zaftr*, 760 F. Supp. 3d at 283 (internal quotation marks and citations omitted).

> ### 2.    *Plaintiffs' injuries are traceable to Defendants' wrongdoing.*

"Fair traceability requires a causal connection between the injury-in-fact and a defendant's conduct; the injury cannot result from the independent action of some third party not before the court." *Lutter v. JNESO*, 86 F.4th 111, 127 (3d Cir. 2023) (internal quotation marks and citations omitted). The Third Circuit has recently reiterated that "[t]he traceability element is akin to 'but for' causation in tort." *LaSpina v. SEIU Pennsylvania State Council*, 985 F.3d 278, 284 (3d Cir. 2021). And at the pleading stage, "standing may be satisfied even if the plaintiff

alleges an indirect (or multistep) causal relationship between the defendant's conduct and her injury." *Id.* at 287.[2]

Here, Plaintiffs' injury-in-fact—the nonpayment owed—is directly traceable to Defendants' broken promises and promotion of the petition program. (*See* Compl. ¶¶ 3–4, 16–30.) Their injuries do not stem from the independent actions of any third party, and Defendants do not contend otherwise. Plaintiffs have therefore established the requisite traceability for standing.

### 3. *Plaintiffs can obtain redress through an award of damages.*

"The redressability requirement ensures that the asserted injury-in-fact is capable of resolution in a manner consistent with the traditional understanding of the judicial process." *Lutter v. JNESO*, 86 F.4th 128. To meet this requirement, "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Id.* (quoting *Lujan*, 504 U.S. at 561). Plaintiffs easily satisfy this standard: they seek damages to remedy Defendants' breach of contract and broken promises—relief that courts have long recognized as sufficient redress. *See id.* (recognizing damages as a form of judicial redress); *Uzuegbunam v. Preczewski*, 592 U.S. 279, 283 (2021) ("nominal damages by itself can redress a past injury").

### B.    Plaintiffs Plausibly Allege Their Entitlement to Payment

Defendants' standing argument boils down to a single claim: Plaintiffs have not plausibly alleged an entitlement to payment. They contend that Plaintiffs failed to allege compliance with the petition program's purported payment conditions—such as providing email addresses or

---

[2]    If needed, district courts may conduct preliminary evidentiary hearings to resolve pre-discovery challenges to standing. *Graham v. Universal Health Serv., Inc.*, 539 F. Supp. 3d 481, 488 (E.D. Pa. 2021) (citing *Finkelman v. National Football League,* 810 F.3d 187, 202 n.97 (3d Cir. 2016)).

submitting IRS W-9 forms for payments over $600—and that such allegations are required to establish an injury-in-fact. That argument fails for three reasons.

### 4.    Defendants ignore Federal Rule of Civil Procedure 9(c).

Under Rule 9(c), "it suffices to allege generally that all conditions precedent have occurred or been performed."[3] Fed. R. Civ. P. 9(c). Because this rule governs the pleading of conditions precedent, it requires only general allegations—not plausibility. *Hildebrand v. Allegheny Cnty.*, 757 F.3d 99, 112 (3d Cir. 2014) ("the pleading of conditions precedent falls outside the strictures of *Iqbal* and *Twombly*"); *Gress v. Freedom Mortg. Corp.*, 386 F. Supp. 3d 455, 467 (M.D. Pa. 2019).

Plaintiffs allege they signed, and "successfully refer[red]" other registered voters to sign, the America PAC petition. (Compl. ¶¶ 23–30.) They also allege that Defendants failed to pay them. (Compl. 9–11) These allegations easily meet Rule 9(c)'s standard.

Defendants' reliance on *Finkelman v. Nat'l Football League*, 810 F.3d 187 (3d Cir. 2016), is misplaced. In *Finkelman*, the plaintiff claimed harm from being unable to buy a ticket at face value through the NFL's lottery system. *Id.* at 197. The Third Circuit found he lacked standing because he never entered the lottery, reasoning that "any harm that Finkelman suffered is properly attributed not to the NFL, but rather to his own decision not to enter." *Id.* at 198.

Here, by contrast, Plaintiffs participated in the referral program. Defendants instead argue that Plaintiffs failed to allege compliance with every single payment condition. But Rule 9(c) does not require such specificity, so that argument should be rejected.

---

[3]    Plaintiffs can amend their Complaint to expressly state this exact language if the Court deems it necessary.

### 5. Defendants overstate the general pleading standard for standing.

Even apart from Rule 9(c), the injury-in-fact requirement "is not Mount Everest." *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 633–34 (3d Cir. 2017) (internal citation omitted). The Third Circuit has called it "very generous," requiring only "some specific, identifiable trifle of injury." *Id.* "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct" are sufficient because courts must "presume that general allegations embrace those specific facts that are necessary to support the claim." *Id.* (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)).

Plaintiffs allege that they are owed payment for successful petition referrals. (Compl. 9–11.) That allegation implies compliance with any conditions and suffices for standing.

### 6. The Court can infer that Plaintiffs satisfied any payment conditions.

Defendants identify four conditions for payment: (1) the referee listed the referrer; (2) both were eligible voters who signed the petition; (3) America PAC verified their information; and (4) a signed W-9 was submitted for payments exceeding $600.

Nothing in the Complaint suggests that Plaintiffs failed to meet those conditions. To the contrary, Plaintiffs allege their eligibility and successful referrals. (Compl. ¶¶ 3, 23–30.) And Defendants cite no authority suggesting that missing a single condition would disqualify Plaintiffs from receiving payment.

Taking Plaintiffs' allegations as true, and drawing all reasonable inferences in their favor, the Court should conclude that they are entitled to payment. *See Jermax, Inc. v. AK Steel Corp.*, 2010 WL 2652276, at *4–5 (D.N.J. 2010) (holding that, because the plaintiff was entitled to reasonable inferences as to whether it fulfilled its contractual obligations, it had pleaded a "potentially viable cause of action"). During discovery, Defendants can attempt to establish facts supporting their defense. But Plaintiffs need not prove their cases upon the filing of their

Complaint. Requiring them to state the exact number of petitions they submitted, the dates they did so, etc., are details that will be fleshed out in litigation (including from discovery of Defendants' records) and should not be required in the complaint.

### C.    Defendants' Roles Are Alleged and Will Be Established in Discovery

Defendants next argue that Plaintiffs fail to allege a causal connection between their injuries and Defendants Group America LLC and Elon Musk. But they cite no authority for the notion that Rule 8 requires a plaintiff to detail each defendant's specific role in the misconduct, particularly where that information is uniquely within the defendants' control.

As the court explained in *Negron v. Progressive Cas. Ins. Co.*, "[r]equiring this sort of detail at the pleading stage would be one small step shy of requiring production of actual documentation with the complaint—a level of proof not demanded even at trial, and far beyond what any federal pleading rule contemplates." 2016 WL 796888, at *10 (D.N.J. Mar. 1, 2016) (quoting *Foglia v. Renal Ventures Mgmt., LLC*, 754 F.3d 153, 156 (3d Cir. 2014)).[4] Discovery is the proper vehicle for clarifying each defendant's role, and Defendants may seek summary judgment following discovery if the facts do not support their involvement. *See Negron*, 2016 WL 796888, at *10.

In any event, Plaintiffs do allege each Defendant's role. They allege that Musk founded America PAC, personally promoted its petition and referral program, and is jointly liable for Plaintiffs' unpaid referral fees. (Compl. ¶¶ 13, 19–21.) And as the *Doe* plaintiffs specified, Group America LLC employed canvassers who are also owed money. *See* Am. Compl. ¶¶ 24, 28–30, *Doe, et al. v. America PAC, et al.*, No. 2:25-cv-01691-WB (E.D. Pa.) (ECF No. 14).

---

[4]    *Negron* was decided under Rule 9(b)'s heightened pleading standard for fraud. If Rule 9(b) does not require a plaintiff to specify each defendant's role in the alleged misconduct for an allegation of fraud, then Rule 8's more lenient standard certainly does not.

Defendants have ample notice of Plaintiffs' claims and the grounds on which they rest. Rule 8 requires nothing more.

### D.    Plaintiffs State a Claim for Breach of Contract

Defendants wrongly contend that Plaintiffs fail to state a claim for breach of contract. To state such a claim, "the complaint must allege (1) the existence of a valid and binding contract, (2) that Plaintiff has complied with the contract and performed her own obligations under it, (3) fulfillment with all conditions precedent, (4) a breach of the contract, and (5) damages to plaintiff." *Pierce v. Montgomery Cnty. Opportunity Bd., Inc.*, 884 F. Supp. 965, 970 (E.D. Pa. 1995) (citing 5 Fed. Prac. & Proc. Civ. § 1235). Each element exists here.

Plaintiffs allege that Defendants offered to pay $47—later increased to $100—for each successful referral of a registered voter in a swing state who signed the America PAC petition. (Compl. ¶¶ 1–2.) By referring eligible voters to sign the petition, Plaintiffs accepted the offer and formed a binding contract with Defendants. (Compl. 9–11, ¶ 3.) Defendants breached that contract by failing to pay the full amounts owed. (Compl. 9–11, ¶ 4.)

Defendants' argument that Plaintiffs failed to allege compliance with the referral program's terms is wrong. Plaintiffs specifically allege they met the conditions for payment, including referring eligible voters and providing the necessary information for processing payment. (Compl. ¶ 3.) They also allege that they are registered voters who successfully referred other registered voters and that Defendants failed to pay them as promised. (Compl. ¶¶ 3–4, 23–30.) These allegations are more than enough to establish performance under the contract.

Nor does the absence of specific allegations about IRS W-9 forms defeat the claim. The W-9 requirement may be a condition subsequent, not a condition precedent, to contract formation. *See Vandergrift v. Pennsauken Sch. Dist.*, 2017 WL 6566139, at *10 (D.N.J. Dec. 22, 2017) (citing 17A C.J.S. Contracts § 451). Plaintiffs' failure to allege their submission of a W-9

does not negate the existence of the contract or Defendants' breach.[5] *Id.* In any event, Plaintiffs allege they repeatedly attempted to secure full payment, reflecting reasonable efforts to meet any follow-up requirements. (*See, e.g.*, Compl. ¶ 28.)

Finally, Defendants' suggestion that Plaintiffs must plead the precise number of referrals or exact amounts owed misconstrues the Rule 12(b)(6) standard. Plaintiffs have alleged sufficient facts to put Defendants on notice of the claims, including the nature of the breach and the estimated amounts owed. (Compl. ¶¶ 25–30.) The exact number of referrals is a matter for discovery, not a motion to dismiss.

### E.    Plaintiffs State a Claim for Promissory Estoppel

Defendants also seek dismissal of the promissory estoppel claim by recycling the same arguments raised against the contract claim. They argue that Plaintiffs cannot show justifiable reliance because their referrals may not have met the program's criteria, and therefore, enforcing any promise would not serve the interests of justice. That argument also fails.

Promissory estoppel applies "where (1) the promisor makes a promise that he reasonably expects to induce action or forbearance by the promisee, (2) the promise does induce action or forbearance by the promisee, (3) and injustice can only be avoided by enforcing the promise." *Carlson v. Arnot-Ogden Mem'l Hosp.*, 918 F.2d 411, 416 (3d Cir. 1990) (citing *Cardmone v. Univ. of Pittsburgh*, 384 A.2d 1228, 1233 (Pa. Sup. Ct. 1978). Plaintiffs allege all three elements.

---

[5]    Under 26 C.F.R. § 31.3406(h)–3, the Form W-9 is used by a payee to certify their taxpayer identification number (TIN) and other relevant information. The form's purpose is to determine whether the payee is subject to backup withholding. If the payee fails to provide a valid W-9 form, the payor may be required to withhold taxes from payments made to the payee. *See* 26 C.F.R. §§ 1.871–14, 31.3406(h)–3. However, this withholding requirement does not affect the enforceability of the contract itself; it merely impacts the tax treatment of payments under the contract.

They allege that Defendants promised to pay them and other class members for signing the America PAC petition and referring registered voters in swing states to do the same. (Compl. ¶¶ 1–2, 16–22.) That promise induced Plaintiffs to make successful referrals. (Compl. ¶¶ 23, 25–30.) Defendants have since failed to pay Plaintiffs. (Compl. ¶ 24.) Enforcing Defendants' promise is the only way to avoid injustice. These allegations state a valid claim for promissory estoppel.

Defendants' argument that Plaintiffs' reliance was unreasonable because they did not meet the referral program's requirements is contradicted by the allegations. Plaintiffs allege they complied with the conditions for payment, including referring eligible voters and providing necessary information. (Compl. ¶¶ 3, 25, 27, 29.) Defendants' refusal to pay for those referrals is precisely the kind of harm promissory estoppel is designed to remedy.

If there is any doubt about the reasonableness of Plaintiffs' reliance, that is a factual question not properly resolved at the pleading stage. *See K7 Design Grp., Inc. v. Five Below, Inc.*, 540 F. Supp. 3d 508, 513 (E.D. Pa. 2021) ("Justifiable reliance is typically a question of fact for the fact-finder to decide."). At this stage, Plaintiffs have more than plausibly alleged a claim for promissory estoppel.

### F.      If Needed, Plaintiffs Can Amend

Rule 15 reflects the Federal Rules' liberal amendment policy, instructing courts to "freely give leave" to amend "when justice so requires." Fed. R. Civ. P. 15. The Third Circuit has consistently applied this principle, holding that leave to amend should be granted unless amending would be futile. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008).

Defendants' proposed order seeks to dismiss the entire Complaint with prejudice. (ECF No. 22.) Yet they fail to explain why Plaintiffs should be denied leave to amend if the Court

were to find any deficiencies. If the Court finds that additional factual allegations are necessary, Plaintiffs respectfully request leave to amend.

### G.    Venue is Proper

Defendants also challenge venue under 28 U.S.C. § 1391(b)(2), asserting that "[v]enue is improper in the Eastern District of Pennsylvania because the substantial events giving rise to Plaintiffs' claims—program administration and payment processing—occurred in Texas." (Defs.' Br. 17, ECF No. 22-1.) Tellingly, Defendants did not raise this argument in *Doe*, even though the same alleged facts would apply there. In any event, Defendants misstate the applicable standard under § 1391(b)(2).

Under Section 1391(b)(2), venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). When a defendant challenges venue under Section 1391(b)(2), district courts "undertake a two-part inquiry." *Blackstone v. Trans Union, LLC*, 2023 WL 4671354, at *2 (E.D. Pa. July 19, 2023); *see also* 32A Am. Jur. 2d Federal Courts § 1110. First, the court identifies "the nature of the claims and the acts or omissions that the plaintiff alleges give rise to those claims." *Id.* (internal quotation marks and citation omitted). Second, the court determines "whether a substantial part of those acts or omissions material to those claims have occurred in the district in question." *Id.* (cleaned up).

Crucially, a district need not be the best forum—only a proper one. *See MacKay v. Donovan*, 747 F. Supp. 2d 496, 502 (E.D. Pa. 2010) ("Venue does not have to be the best forum for the action, as multiple districts could be proper, and a plaintiff's choice of venue is accorded deference."); *Largotta v. Banner Promotions, Inc.*, 356 F. Supp. 2d 388, 390 (S.D.N.Y. 2005) ("[T]hat substantial activities also took place in other districts … does not preclude a finding that venue is proper."). The statute does not require "a majority of the events to take place" in the

selected district. *Park Inn Int'l, L.L.C. v. Mody Enters., Inc.*, 105 F. Supp. 2d 370, 376 (D.N.J. 2000) (citing *Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994)). Plaintiffs need only select a district where a substantial part of the relevant events or omissions occurred. *See* 32A Am. Jur. 2d Federal Courts § 1111.

"Because improper venue is an affirmative defense, the burden of proving lack of proper venue remains—at all times—with the defendant." *Great W. Min. & Min. Co. v. ADR Options, Inc.*, 434 F. App'x 83, 86 (3d Cir. 2011) (citing *Myers v. Am. Dental Ass'n,* 695 F.2d 716, 724–25 (3d Cir. 1982)). Defendants' bare assertion that "program administration and payment processing" occurred in Texas falls well short of satisfying that burden. Indeed, by not challenging venue in *Doe*, Defendants have implicitly conceded that a substantial part of the events giving rise to Plaintiffs' claims and the class claims occurred in this District.

For example, Plaintiff Anthony Maglietta resides in Lancaster, Pennsylvania, which is within this District. (Compl. ¶ 6.) While Defendants America PAC and Group America, LLC may be based in Austin, Texas, their operations extended into Pennsylvania, where key interactions with Plaintiffs and other class members occurred. Indeed, Defendants specifically targeted Pennsylvania voters by offering increased compensation of $100 per signature and successful referral in the Commonwealth. (Compl. ¶¶ 1–2.) Musk, in particular, focused his efforts on Pennsylvania voters. (Compl. ¶ 20.)

These facts—targeted conduct in Pennsylvania, a named plaintiff residing here, and direct harm occurring within this District—satisfy 28 U.S.C. § 1391(b)(2). Defendants'

13

conclusory claim that Texas is a better venue does not change that conclusion, much less satisfy their burden of proving that venue is improper.[6]

## V.   CONCLUSION

Defendants made a clear promise. Plaintiffs did exactly what was asked of them. Defendants failed to pay. Rule 12 is not a shield for broken promises. The Court should deny Defendants' Motion to Dismiss.

If the Court believes any aspect of the pleading requires clarification or additional specificity, Plaintiffs respectfully request leave to amend. The Court may also hold preliminary hearings to resolve standing or venue, but under no circumstances should Plaintiffs' Complaint be dismissed with prejudice.

Dated: August 8, 2025

Respectfully submitted,

ANTHONY MAGLIETTA, STEVEN REID, and JERRY VICTORIOUS, individually and on behalf of all others similarly situated,

By their attorneys,

*s/ Shannon Liss-Riordan*
Shannon Liss-Riordan (*pro hac vice*)
Thomas Fowler (*pro hac vice*)
Jeremy E. Abay (PA # 316730)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
sliss@llrlaw.com
tfowler@llrlaw.com
jabay@llrlaw.com

*Attorneys for Plaintiffs*

---

[6]   This District is also a proper venue for absent class members. *See Fischer v. Federal Express Corp.*, 42 F.4th 366, 375 (3d Cir. 2022)) ("[W]e agree with many of our colleagues across the appellate and trial benches who held have that *Bristol-Myers* did not change the personal jurisdiction question with respect to class actions.").

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on August 8, 2025, I caused a true and correct copy of the foregoing to be filed with the Court's CM/ECF system, which constitutes service on Defendants, whose counsel are registered participants on that system.

<u>*s/ Shannon Liss-Riordan*     </u>
Shannon Liss-Riordan