# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| **ANTHONY MAGLIETTA, STEVEN REID, AND JERRY VICTORIOUS,** | : <br> : <br> : |
|  | :    No.  5:25-cv-02364-WB |
| *Plaintiffs*, | : |
| v. | : <br> : |
| **AMERICA PAC; GROUP AMERICA, LLC; AND ELON MUSK** | : <br> : <br> : |
| *Defendants*. | : <br> : |

## DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS

Defendants America PAC, Group America, LLC, and Elon Musk, by and through their undersigned counsel, respectfully submit this reply in support of their Motion to Dismiss (ECF No. 22, "MTD") Plaintiffs' Complaint (ECF No. 1). Plaintiffs' Response (ECF No. 34, "Resp.") is nothing more than a copy-and-paste of the same baseless opposition they filed in the related case *Doe, et al. v. America PAC, et al.*, No. 2:25-cv-01691-WB (E.D. Pa.).[1] It *again* misstates the standard for dismissal, *again* fails to cure their lack of Article III standing, and *again* misstates the law and relevant facts. Plaintiffs' arguments are no more persuasive here than they were in *Doe*.

Additionally, the Response fails to adequately rebut the improper venue issue specific to this case. Where, as here, all Defendants are based in Texas, all relevant transactions occurred in Texas, all substantial events took place in Texas—and where Plaintiffs seek to certify classes across <u>seven states</u>, each with distinct laws governing breach of contract and promissory estoppel—a lone

---

[1] Much of the Response is copied verbatim from Plaintiffs' opposition in *Doe* (No. 2:25-cv-01691-WB (E.D. Pa.), ECF No. 34.2) ("Doe Resp."), including Plaintiffs' inaccurate legal standard section (Resp. at 2–3; *compare* Doe Resp. at 2), Rule 9(c) discussion (Resp. at 6–7; *compare* Doe Resp. at 3–4), and arguments on Defendants Musk and Group America (Resp. at 8–9; *compare* Doe Resp. at 5–6).

plaintiff's limited Pennsylvania connection is insufficient to establish venue in this District. For the reasons here and in the MTD, this case should be dismissed with prejudice.

## I.    Plaintiffs Misrepresent the Legal Standard for Dismissal.

As in *Doe*, Plaintiffs attempt to lower the pleading bar by asserting that an outdated and inapplicable motion to dismiss standard applies. They incorrectly claim that a complaint "can only be dismissed if it appears to a certainty that no relief could be granted under any set of facts which could be proved." Resp. at 3 (quoting *Schrob v. Catterson*, 948 F.2d 1402, 1408 (3d Cir. 1991)).

This is false. *Schrob* predates—and was superseded by—the Supreme Court's decisions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). The controlling standard is clear: "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678; *see also Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 230-32 (3d Cir. 2008) (adopting *Twombly*'s plausibility requirement and rejecting the "no set of facts" standard). This requires "more than a sheer possibility that a defendant has acted unlawfully," and allegations that are "merely consistent with a defendant's liability" or that consist of "threadbare recitals of the elements of a cause of action" and "mere conclusory statements" do not suffice. *Iqbal*, 556 U.S. at 678.

## II.    The Response Fails to Cure Plaintiffs' Pleading Deficiencies and Lack of Standing.

### a.    Plaintiffs Have Not Pled the Foundational Elements of Article III Standing.

As the party invoking federal jurisdiction, Plaintiffs "bear[] the burden of establishing standing and must clearly allege facts demonstrating each element." *Yaw v. Delaware River Basin Comm'n*, 49 F.4th 302, 311 (3d Cir. 2022) (citation omitted) (cleaned up). The "irreducible constitutional minimum" of standing requires that Plaintiffs clearly allege facts demonstrating: (1) an injury-in-fact that is concrete, particularized, and actual or imminent, not conjectural or

hypothetical; (2) a causal connection between the injury and Defendants' conduct; and (3) a likelihood that a favorable decision will redress the injury. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992); *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Plaintiffs have failed to meet their burden to allege any of these three requirements.

<u>Injury-in-Fact.</u> Plaintiffs flatly contend that they have satisfied Article III's injury-in-fact requirement simply by virtue of alleging that they suffered some undisclosed amount of "monetary damages."[2] Resp. at 3–4. This is incorrect. Alleged economic injury must rest on well-pleaded facts showing an actual, concrete loss—not on conclusory assertions or speculation. *Finkelman v. Nat'l Football League*, 810 F.3d 187, 194 (3d Cir. 2016); *In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs. & Liab. Litig.*, 903 F.3d 278, 289 (3d Cir. 2018). Courts in the Third Circuit have made clear that "a plaintiff must do more than offer conclusory assertions of economic injury in order to establish standing. She must allege facts that would permit a factfinder to value the purported injury at something more than zero dollars *without resorting to mere conjecture*." *Johnson & Johnson*, 903 F.3d at 289 (emphasis added).[3]

---

[2] Plaintiffs' reliance on *Zaftr Inc. v. Kirk*, 760 F. Supp.3d 275, 283 (E.D. Pa. 2024), and *Sylvester v. Depositors Ins. Co.*, 481 F. Supp.3d 412, 418 (E.D. Pa. 2020), is misplaced. In both cases, standing existed because the plaintiffs alleged—and the record confirmed—that they had fully performed under an agreement, thereby triggering an undisputed contractual obligation for the defendant to pay a defined sum, which the defendant then failed to pay. *See Zaftr*, 760 F. Supp.3d at 283 (missed settlement payments under written agreement); *Sylvester*, 481 F. Supp. 3d at 418 (failure to pay insurance proceeds under existing policy after covered loss). Here, by contrast, Plaintiffs plead no facts showing they performed in a manner that triggered any payment obligation under Defendants' referral program.

[3] Plaintiffs also wrongly assert that the mere prospect of nominal damages "alone" satisfies the injury-in-fact requirement for Article III standing. Resp. at 4 (quoting *Zaftr*, 760 F. Supp.3d at 283). As an initial matter, this argument is moot because Plaintiffs are not seeking nominal damages in this action. More fundamentally, it is another example of Plaintiffs' attempt to turn pleading standards on their heads. Injury-in-fact requires a concrete, actual invasion of a legally protected interest; it cannot be supplied by the possibility of a future remedy. *Lujan*, 504 U.S. at 560; *Spokeo*, 578 U.S. at 338-39. Plaintiffs' quoted language from *Zaftr*—beyond being dicta—was made in the context of an undisputed contractual duty to pay under a settlement agreement, where the breach itself was already established. The circumstances here are entirely different: Plaintiffs have not plausibly alleged that any payment obligation was triggered, so there is no underlying injury for nominal damages to attach to.

Here, Plaintiffs' alleged injuries are based on their vague and conclusory claims that they "referred many voters" to America PAC's petition and are owed "several thousand dollars." They offer no facts showing how many referrals were actually made, whether those referrals met the program's eligibility requirements, or that Defendants were contractually obligated to pay them any concrete or substantiated amount. As in *Finkelman*, Plaintiffs' alleged injuries "rely on a chain of contingencies" that their pleadings do nothing to establish. 810 F.3d at 194. Plaintiffs' alleged injuries are nothing more than speculation, "and speculation is not enough to sustain Article III standing." *Johnson & Johnson*, 903 F.3d at 290.

While this Circuit has recognized that "[i]njury-in-fact is not Mount Everest," *Danvers Motor Co. v. Ford Motor Co.*, 432 F.3d 286, 294 (3d Cir. 2005), it has consistently held that "it is more than a desert mirage." *Johnson & Johnson*, 903 F.3d at 290; *Kress v. Zoning Hearing Bd. of Sugarloaf Twp.*, No. 3:23-CV-01389, 2025 WL 1643597, at *6 (M.D. Pa. June 9, 2025). At the pleading stage, Plaintiffs must "do more than simply pair a conclusory assertion of money lost with a request that a defendant pay up." *Johnson & Johnson*, 903 F.3d at 290.

Causation. Plaintiffs also fail to plead facts tying any specific nonpayment to any Defendant. Article III requires an injury "fairly traceable" to the challenged conduct—not to Plaintiffs' action or inaction, including their failure (or a third party's failure) to meet the program's prerequisites. *Toll Bros., Inc. v. Twp. of Readington*, 555 F.3d 131, 138–39 (3d Cir. 2009); *Finkelman*, 810 F.3d at 193–98. The referral program paid only for **verified transactions** where an eligible voter signed, listed the referrer, and—if over $600—the referrer submitted a valid W-9. Plaintiffs identify no signer, no listing, no verification, and no W-9, relying instead on vague claims they "referred many voters" and "were not paid." Plaintiffs' claims are pure conjecture.

4

Plaintiffs attempt to bridge these gaps by: (1) redefining traceability as "but-for causation" that tolerates multi-step chains, (2) insisting no third-party actions are involved, and (3) suggesting a W-9 is a mere after-the-fact formality. Resp. at 9–10. These arguments fail. First, *Finkelman* makes clear that "but-for" allegations do not establish Article III causation where independent contingencies break the chain.[4] 810 F.3d at 193. Second, Plaintiffs' own allegations confirm that payment required action by third parties—eligible voters—whose listing of the referrer, voter eligibility status, and verification were outside Defendants' control. Third, the W-9 requirement was not optional; without it, payments over $600 could not issue as a matter of law. In short, any alleged nonpayment here is *at least* as plausibly explained—if not more plausibly explained—by non-listing, ineligibility, lack of verification, or missing tax documentation, none of which is traceable to Defendants.

<u>Redressability.</u> Additionally, Plaintiffs cannot show that a favorable judgment would likely—rather than merely speculatively—remedy a concrete injury. *See Lujan*, 504 U.S. at 561. They identify no specific unpaid, qualifying referral tied to any Defendant, no number of such referrals, no signer, no allegation that any signer listed a named Plaintiff, no verification, and no W-9 submission. Any award would require the Court to assume that unidentified transactions satisfied all program prerequisites—eligibility, listing, verification, etc.—and then speculate about amounts owed. That is precisely the sort of conjectural, assumption-laden remedy Article III forbids. *See, e.g., Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 38 (1976).

As Plaintiffs have failed to allege any injury-in-fact, causation, or redressability, their Complaint must be dismissed for lack of Article III standing.

---

[4] Plaintiffs cite *LaSpina v. SEIU Pennsylvania State Council*, 985 F.3d 278, 284 (3d Cir. 2021) for the propositions that traceability is "akin to 'but for' causation" and that an indirect chain can suffice at the pleading stage. Resp. at 4. However, the *LaSpina* court dismissed that action for lack of causation, emphasizing that "but for" analysis requires isolating the challenged conduct and rejecting chains that depend on independent contingencies or third-party.

**b.    Plaintiffs Misrepresent the Law Regarding Conditions Precedent.**

Confronted with their pervasive pleading deficiencies, Plaintiffs misstate the law regarding pleading standards to lower the bar to survive dismissal. Plaintiffs' counsel raised these exact same arguments in *Doe*, and have added those sections here nearly verbatim. Those arguments were inaccurate and unpersuasive in *Doe*, and they fare no better copied-and-pasted here.

Notably, the Response (at 5–6) tries to sidestep Plaintiffs' pleading failures by invoking Rule 9(c), which provides that "[i]n pleading conditions precedent, it suffices to allege generally that all conditions precedent have occurred or been performed." Fed. R. Civ. P. 9(c). However, to whatever extent 9(c) allows for conditions precedent to be alleged generally, Plaintiffs have failed to make even the most general of allegations here. The Complaint contains no statement—general or otherwise—that all conditions precedent to payment were satisfied. The absence of such allegations is precisely the sort of omission that has led courts, including in the Third Circuit, to affirm dismissal. *See Chemtech Int'l, Inc. v. Chem. Injection Techs., Inc.*, 247 F. App'x 403, 405 n.1 (3d Cir. 2007) (upholding dismissal where Chemtech failed to allege "two conditions precedent occurred at all.").

Even if Plaintiffs *had* included sufficient Rule 9(c) allegations, that would not save their case. Rule 9(c) governs pleading for contractual or statutory conditions precedent; it does not speak to, let alone lower, the "constitutional minimum" required for Plaintiffs to establish standing under Article III. Plaintiffs cite no authority suggesting that a bare, conclusory statement under Rule 9(c) can substitute for well-pleaded facts establishing those elements.

Plaintiffs' appeal to "reasonable inferences" fares no better. An inference must rest on specific, factual allegations—not a chain of speculation. Yet Plaintiffs ask the Court to assume that qualifying transactions occurred, that all payment prerequisites were met, and that Defendants

nonetheless withheld payment. Those are not a reasonable inferences. They are a string of conjectures, each dependent on the last. Article III and the plausibility standard under *Twombly* and *Iqbal* require more.

c.    **Plaintiffs Plead No Relevant Conduct by Musk or Group America.**

Plaintiffs' pleading failures are most pronounced with respect to Defendants Group America, LLC and Elon Musk, as the Complaint is devoid of any factual allegations connecting either to any alleged nonpayment. Group America, LLC is mentioned ***one time*** in the Complaint, in the Parties section (Compl. ¶ 11), and is never tied to any act or omission. Musk is alleged to be the founder of America PAC and to have posted twice on "X" promoting the program (*id*. ¶¶ 19–20), but Plaintiffs allege no facts suggesting he played any role in administering it or in the unspecified referral transactions at issue.

The Response's claim (at 8–9) that Defendants' roles will be established in discovery again misstates the law: standing must be established at the pleading stage. *See Twombly*, 550 U.S. at 545; *Toll Bros., Inc.*, 555 F.3d at 142. Plaintiffs' reliance on *Negron v. Progressive Cas. Ins. Co.*, No. CV 14-577, 2016 WL 796888 (D.N.J. Mar. 1, 2016), is misplaced. In *Negron*, the plaintiff alleged that each defendant "had some role" in the challenged scheme, but lacked detail on which entity performed which act. *Id*. at *10. Here, there is no allegation that Musk or Group America had *any* role in verifying referrals, processing W-9s, or issuing payments—the only conduct at issue here. Accordingly, Plaintiffs have failed to meet their burden to establish Article III standing for these defendants.

III.    **The Response Does Not Cure Plaintiffs' Failure to State a Claim Under Rule 12(b)(6).**

a.    **Breach of Contract.**

The Response cannot cure the fatal defects in Plaintiffs' breach of contract claim. As set out in the MTD, the program's express terms required: (1) a registered, eligible voter sign the petition; (2) the voter list the referrer at the time of signing; (3) verification of the information; and (4) for payments over $600, submission of a signed W-9. *See* MTD (ECF No. 22-1) at 2-3. Plaintiffs plead no facts showing that any allegedly unpaid referral satisfied these conditions. Instead, they repeat conclusory allegations that they "referred many voters" and were "not paid the full promised amounts," coupled with speculative "estimates" of amounts owed. Resp. 9–10. That is precisely the sort of "naked assertion devoid of further factual enhancement" *Twombly* and *Iqbal* reject. *See Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007) (requiring allegations of plaintiff's own contractual performance). Without well-pleaded facts showing compliance with the program's prerequisites, there is no plausible breach of contract. *See also* MTD at 18-22.

**b.    Promissory Estoppel.**

Plaintiffs' alternative promissory estoppel claim fares no better. The Response simply recycles the same conclusory allegations from the Complaint and asserts that justifiable reliance is "typically" a factual question, citing *K7 Design Grp., Inc. v. Five Below, Inc.*, 540 F. Supp. 3d 508 (E.D. Pa. 2021). Resp. 11. That principle does not save this claim. Courts routinely dismiss promissory estoppel claims where there was no express promise and where the conditions of a contingent promise were not met. *See Willekes v. Serengeti Trading Co.*, No. CV137498ESMAH, 2016 WL 5334522, at *12 (D.N.J. Sept. 22, 2016); *Cohn v. Pa. State Univ.*, 2020 WL 738496, at *10 (E.D. Pa. Feb. 12, 2020). The only alleged "promise" here is the public offer to pay for qualifying referrals that satisfied the program's requirements. Compl. ¶¶ 1–2, 16–22. Plaintiffs do not plead facts showing that any allegedly unpaid referral met those requirements. Reliance on a conditional promise, without pleading compliance, is unreasonable as a matter of law.

**IV.    The Response Fails to Rebut the Fact that Venue is Improper in This District.**

Setting aside Plaintiffs' failure to establish standing or a claim, the Response does not cure Plaintiffs' failure to demonstrate that this District is a proper venue. Plaintiffs claim that it is "telling" Defendants did not raise venue as an issue in *Doe*. Resp. at 12. However, Plaintiffs themselves acknowledge the reasoning for why venue is a specific issue here: "*Doe* is limited to Pennsylvania, while this matter encompasses all states in which individuals signed the petition or referred others to sign and were not paid for the signatures." Resp. at 2 n.1.

This admission underscores why venue is improper here. Venue is determined based on the claims actually asserted, and § 1391(b)(2) requires that "a substantial part of the events or omissions giving rise to the claim" occur in the chosen district. *Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994). Here, all Defendants are based in Texas, all relevant transactions occurred in Texas, all substantial events underlying the claims took place in Texas, and Plaintiffs seek to certify classes across seven states—each with distinct laws governing breach of contract and promissory estoppel. In that context, a lone plaintiff's limited Pennsylvania connection is insufficient to establish venue here.

Moreover, it cannot be said that a "substantial" part of the material events occurred in Pennsylvania when it is only one of seven states at issue—representing, at most, one-seventh of the jurisdictions implicated by Plaintiffs' claims. Plaintiffs' expansive, multi-state class allegations raise the very real prospect of inconsistent applications of differing state laws, further underscoring that this is not a Pennsylvania-centered dispute. The operative conduct at the heart of every claim— program administration, verification, and payment processing—occurred in Texas, not in this District.

Plaintiffs' contrary arguments rely on contacts that are legally irrelevant. For venue purposes, it is not enough that a lone plaintiff resides in the forum or that some incidental effects of an alleged breach are felt there. *See Cottman*, 36 F.3d at 294; *Cumberland Truck Equip. Co. v. Detroit Diesel Corp.*, 401 F. Supp. 2d 415, 425 (E.D. Pa. 2005). Although multiple venues can be proper in some cases, § 1391(b)(2) still requires that a substantial part of the events material to the claims occur here, and Plaintiffs bear the burden of showing that is so. Plaintiffs' reliance on Plaintiff Maglietta's residence and a Pennsylvania-specific payment increase does not change the fact that the substantial events giving rise to any alleged claims occurred in Texas.

## V.    Plaintiffs Should be Denied Leave to Amend.

Plaintiffs close by requesting leave to amend if the Court finds their allegations deficient— an offer they make no less than three times in their opposition brief. Resp. 2, 6, 11-12. They offer no proposed amendments, no explanation of how amendment would cure the defects identified in the MTD, and no Rule 7(b)(1) motion stating with particularity the grounds for such relief. *See* Fed. R. Civ. P. 7(b)(1). This omission is especially telling given that Plaintiffs' opposition here is a near-verbatim copy of the one filed in *Doe*, reflecting that they have already had the opportunity to refine their allegations, and have chosen not to. The same, and none can or will be cured by amendment. *See Trout v. Wentz*, 2011 WL 1842743, at *2 (M.D. Pa. May 16, 2011) (denying leave where amendment would be futile). Because amendment would be both procedurally improper and substantively futile, the Court should dismiss with prejudice.

### CONCLUSION

For the foregoing reasons, this case should be dismissed in its entirety.

Date: August 15, 2025

_/s/ Matthew H. Haverstick_
Matthew H. Haverstick (No. 85072)
KLEINBARD LLC
Three Logan Square, 5th Floor
1717 Arch Street
Philadelphia, PA 19103
Phone: (215) 568-2000
Fax: (215) 568-0140
Eml: mhaverstick@kleinbard.com

_/s/ Anne Marie Mackin_
Chris K. Gober*
Texas State Bar No. 24048499
Andy Taylor*
Texas State Bar No. 19727600
Anne Marie Mackin*
Texas State Bar No. 24078898
Jesse Vazquez*
Florida State Bar No.1013573
Lex Politica PLLC
#129 7415 SW Parkway
Building 6, Suite 500
Austin, TX 78735
Telephone: (512) 354-1785
cgober@lexpolitica.com
ataylor@ataylorlaw.com
amackin@lexpolitica.com
jvazquez@lexpolitica.com

**Attorneys for Defendants**

*_Admitted_ pro hac vice