# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ANTHONY MAGLIETTA, STEVEN REID, AND JERRY VICTORIOUS,** | |
| Plaintiffs, | No. 5:25-cv-02364-WB |
| v. | |
| **AMERICA PAC AND ELON MUSK,** | |
| Defendants. | |

# DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS UNDER RULES 12(b)(1) AND 12(b)(6)

## Table of Contents

I. Introduction ........................................................................................................................... 3

II. Factual Background ............................................................................................................. 4

    A. The Parties ..................................................................................................................... 4

    B. America PAC's Citizen Petition Program ..................................................................... 5

III. Argument and Authority ...................................................................................................... 7

    A. Plaintiffs' claims regarding signature nonpayment should be dismissed under Rule 12(b)(1) because Plaintiffs lack Article III standing. ............................................................ 7

    B. The First Amended Complaint should be dismissed under Rule 12(b)(6) because Plaintiffs fail to state claims upon which relief could be granted. ....................................... 11

    C. Plaintiffs fail to state a claim for breach of contract or promissory estoppel because they do not allege facts that could plausibly support any unmet duty to pay. ...................... 12

    D. Plaintiffs' breach of contract and promissory estoppel claims should be dismissed as to Mr. Musk specifically because Plaintiffs plead no privity or clear personal promise, and no facts that could justify the extraordinary remedy of piercing the corporate veil. ........... 14

IV. Conclusion ......................................................................................................................... 17

# Table of Authorities

**Cases**

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) ................................................................. 7

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................. 11, 12, 14

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................. 11, 12

*Bricklayers & Allied Craftworkers Loc. 1 of Pa/De v. ARB Constr., Inc.*, No. CV 13-3883, 2016 WL 1161528 (E.D. Pa. Mar. 23, 2016) ................................................................. 14

*Brown v. Johnson & Johnson*, 64 F. Supp. 3d 717 (E.D. Pa. 2014) ................................. 16

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212 (3d Cir. 2011) ........................................... 12

*Chand v. Merck & Co.*, No. CV 19-0286, 2019 WL 3387056 (E.D. Pa. July 26, 2019) ....... 12, 14

*Chemtech Int'l, Inc. v. Chem. Injection Techs., Inc.*, 247 F. App'x 403 (3d Cir. 2007) ......... 12, 14

*Connelly v. Lane Const. Corp.*, 809 F.3d 780 (3d Cir. 2016) ........................................ 12, 13

*Donsco, Inc. v. Casper Corp.*, 587 F.2d 602 (3d Cir. 1978) ............................................. 15

*Finkelman v. Nat'l Football League*, 810 F.3d 187 (3d Cir. 2016) .................................. 7, 8

*Franklin Interiors v. Wall of Fame Mgmt. Co.*, 511 A.2d 761 (Pa. 1986) ........................... 12

*Friends of the Earth, Inc. v. Laidlaw Env'tl. Servs., Inc.*, 528 U.S. 167 (2000) .................... 7

*FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215 (1990) ........................................................ 7

*Garcia-Valentie v. McKibbin*, No. CIV.A. 06-5097, 2007 WL 2022067 (E.D. Pa. July 9, 2007) 14

*In re Niaspan Antitrust Litigation*, 2015 WL 8150588 (E.D. Pa. Dec. 8, 2015) ..................... 9

*In re Wolf*, 556 B.R. 676 (Bankr. E.D. Pa. 2016) ............................................................... 15

*Ismail v. Dominion Energy, Inc.*, No. CV 19-1093, 2022 WL 990843 (E.D. Pa. Apr. 1, 2022) .. 15

*Labar Vill. Cmty. Ass'n, Inc. v. VFG-LaBar, L.L.C.*, No. CV 3:08-1010, 2008 WL 11367896 (M.D. Pa. Aug. 1, 2008) ................................................................. 16

*Lumax Indus., Inc. v. Aultman*, 669 A.2d 893 (Pa. 1995) ................................................ 16

*Mangan v. Robbins*, No. CIV.A. 12-2462, 2013 WL 460289 (E.D. Pa. Feb. 7, 2013) .............. 7

*MRO Corp. v. Humana Inc.*, 383 F. Supp. 3d 417 (E.D. Pa. 2019) .................................... 15

*Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353 (3d Cir. 2015) ..................................... 8

*O'Shea v. Littleton*, 414 U.S. 488 (1974) ........................................................................ 8

*Pearson v. Component Tech. Corp.*, 247 F.3d 471 (3d Cir. 2001) ..................................... 16

*Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26 (1976) .................................................. 7

*Sullivan v. Chartwell Inv. Partners, LP*, 873 A.2d 710 (Pa. Super. 2005) ......................... 13

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) ........................................................... 7

*Ware v. Rodale Press, Inc.*, 322 F.3d 218 (3d Cir. 2003) .................................................. 13

*Yaw v. Delaware River Basin Comm'n*, 49 F.4th 302 (3d Cir. 2022) ........................................... 7
*Zubik v. Zubik,* 384 F.2d 267 (3d Cir.1967) ................................................................................. 16
**Rules**
Fed. R. Civ. P. 8(a)(2) .................................................................................................................... 11
Fed. R. Civ. P. 9 ............................................................................................................................. 12

Defendants America PAC and Elon Musk, by and through their undersigned counsel, respectfully move to dismiss Plaintiffs' First Amended Class Action Complaint (ECF No. 28, the "First. Am. Compl.") under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons set forth below, the Court should dismiss this case for lack of Article III standing and failure to state a claim for which relief can be granted.

**I.     Introduction**

In October 2024, America PAC, a political action committee registered with the Federal Election Commission, encouraged registered voters in Pennsylvania, Arizona, Michigan, Georgia, Nevada, North Carolina, and Wisconsin ("Eligible Voters") to sign a citizen petition supporting the Constitution's First and Second Amendments – issues that were highly relevant in that year's election. Verified Eligible Voters in Pennsylvania[1] who signed the petition could earn $47 (or, depending on when they signed, $100). Each verified Eligible Voter in Pennsylvania, Arizona, Michigan, Georgia, Nevada, North Carolina, and Wisconsin who signed the petition and also referred (the "Referrer") another verified Eligible Voter in those states (the "Referee") to sign the petition had an additional opportunity to earn. Specifically, once verified as an eligible Referrer of an eligible Referee, America PAC paid the Referrer $47 (and, later, $100 in Pennsylvania) per eligible referral (the "Program").

Plaintiffs Anthony Maglietta, Steven Reid, and Jerry Victorious claim that they participated in the Program. While none allege that they were not paid for signing the petition, each claim that they referred people to sign the petition and posit that they have not been "fully paid" for those purported referrals. The lack of details provided by Plaintiffs is glaring. Despite this being their

---

[1] Standalone payment for a petition signature was available only to Verified Eligible Voters in Pennsylvania; in Arizona, Michigan, Georgia, Nevada, North Carolina, and Wisconsin, Eligible Voters who signed the petition could earn solely through verified referrals.

second filed complaint in this action, Plaintiffs still have yet to allege any details regarding: (i) how much they *have been* paid; (ii) when or how they were paid; (iii) how many people they referred; (iv) whether the persons they referred were Eligible Voters; (v) whether the persons they referred listed Maglietta, Reid, or Victorious as Referrers; or (vi) any concrete information about how much they believe they are owed.

Plaintiffs' meager allegations, lacking in detail and critical factual support, warrant dismissal of this action under Rules 12(b)(1) and 12(b)(6). First, because no Plaintiff alleges that they were not paid for *signing* the petition, Plaintiffs lack Article III standing to represent a putative class of purportedly unpaid petition signers. Beyond lack of standing, Plaintiffs also fail to state claims upon which relief can be granted. With respect to their breach of contract and promissory estoppel claims, any disparity between actual and expected payments would have turned on third-party actions outside Defendants' control—such as whether someone referred to the petition actually signed, was eligible, and listed one of the Plaintiffs as their Referrer. Additionally, Plaintiffs have failed to plead any valid contract or clear, definite promise by Elon Musk sufficient to maintain a breach-of-contract or estoppel claim against him personally.

Accordingly, the Court should dismiss the First Amended Complaint with prejudice.

## II. Factual Background

### A. The Parties

Defendant Elon Musk founded Defendant America PAC, an independent-expenditure-only political committee registered with the Federal Election Commission. First. Am. Compl. at 2, ¶¶ 10, 12.[2] Plaintiffs Anthony Maglietta, Steven Reid, and Jerry Victorious allege they are residents

---

[2] The numbered paragraph allegations in Plaintiff's Amended Complaint are labeled 1–30. These paragraph numbers restart at 1 on page 7 of the First Amended Complaint. To avoid confusion, this brief cites both page and paragraph numbers.

4

of Pennsylvania, Nevada, and Georgia, respectively. *Id*. at 2, ¶¶ 6–8. Maglietta claims that he "referred many voters in Pennsylvania to sign the America PAC petition" but "was not paid the full promised amounts for these referrals." *Id*. at 6, ¶¶ 24–25. Reid alleges he worked as a canvasser for America PAC in Michigan and Georgia, "referred many voters," and "was not paid the full promised amounts," estimating "at least several thousand dollars" unpaid. *Id*. at 6, ¶¶ 26–27. Victorious likewise alleges he "referred many voters in Georgia and other swing states" and "was not paid the full promised amounts for these referrals." *Id*. at 6, ¶¶ 28–29. None of the Plaintiffs state how many referrals they made, whether the individuals they referred were Eligible Voters who listed them as Referrers (or how they know this), how much they were already paid (or when), or any basis for their unpaid estimates.

### B. America PAC's Citizen Petition Program

Beginning in October 2024, visitors to America PAC's website could sign a "Petition in Favor of Free Speech and the Right to Bear Arms." *Id*. at 3, ¶ 15. America PAC encouraged those who signed the petition to refer others to do the same, and—according to Plaintiffs—offered "$47, later increased to $100 in Pennsylvania," payment for each successful referral of a registered voter who signed the America PAC petition. *Id*. at 3, ¶ 16. Musk promoted America PAC's Program, including through October 6 and October 17, 2024 posts on X. *Id*. at 4-5, ¶¶ 18–19.

Plaintiffs do not allege that they had any written employment agreement with any Defendant. To the extent that Plaintiff Steven Reid claims he "worked as a canvasser," the First Amended Complaint does not allege that referral payments were part of his agreed-upon compensation for canvassing work, or that his referral payments were based on anything other than the Program that was open to any verified Eligible Voter who signed the petition – whether working as an America PAC canvasser or not. *Id*. ¶ 26.

5

The First Amended Complaint references two America PAC communications regarding the terms of the Program. First, it references a message allegedly sent to people who signed the petition, stating:

> You signed the America PAC petition in support of the 1st and 2nd Amendments. That's awesome! Want to help more? Contact your friends and family in swing states and get them to sign the petition as well. You will receive a check for $47 for each eligible petition signer who lists your email address in the referrer section of their petition signature.

First Am. Compl. at 5, ¶ 21.

Second, it incorporates by reference the following language from America PAC's website:

> SIGNER & REFERRER PAYMENT PROGRAMS 10/17 - 11/05 If you signed this petition while a $47 or $100 payment offer was active and met the criteria of state, voter registration status, and/or confirmed referrals, your payment is being processed. Due to volume, all payments are expected to be issued on or before Nov. 30, 2024. Before payment is made, America PAC will verify the accuracy of all information of the referrer and referee. Payments of $600 or more will require the referrer to provide a signed IRS W-9 so an IRS 1099 can be issued. To be eligible, both the referrer and the petition signer must be registered voters of Arizona, Michigan, Georgia, Nevada, North Carolina, Pennsylvania, or Wisconsin.

ECF No. 1-1 at 2; *see also* First. Am. Compl. at 1, ¶ 1 (citing same).

Plaintiffs do not dispute that this accurately describes the Program, and the above language makes the criteria for payment clear. To be eligible to earn, a person had to be a registered voter in Arizona, Michigan, Georgia, Nevada, North Carolina, Pennsylvania, or Wisconsin ("Eligible Voter"). ECF No. 1-1 at 2. To earn for a referral, the Referee also had to be an Eligible Voter and had to list the Referrer's email address in the referrer section of their petition signature. *Id.*; *see also* First Am. Compl. at 5, ¶ 21. Payment would not be issued unless America PAC was able to "verify the accuracy of all information of the referrer and referee," and "[p]ayments of $600 or more will require the referrer to provide a signed IRS W-9." ECF No. 1-1 at 2.

### III. Argument and Authority

#### A. Plaintiffs' claims regarding signature nonpayment should be dismissed under Rule 12(b)(1) because Plaintiffs lack Article III standing.

The burden to establish standing rests with the plaintiffs and "failure to allege the elements of standing means that [federal courts] lack jurisdiction to adjudicate their claims." *Finkelman v. Nat'l Football League*, 810 F.3d 187, 203 (3d Cir. 2016); *see also Yaw v. Delaware River Basin Comm'n*, 49 F.4th 302, 311 (3d Cir. 2022) ("The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing standing and must 'clearly ... allege facts demonstrating each element.'") (citations omitted). The "irreducible constitutional minimum" of standing consists of three elements. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). The plaintiff must have: (1) suffered an injury in fact; (2) that is traceable to the defendant's challenged conduct (causation); and (3) that is likely to be redressed by a favorable decision of the court (redressability). *Friends of the Earth, Inc. v. Laidlaw Env'tl. Servs., Inc.*, 528 U.S. 167, 180–81 (2000). As the party invoking a court's jurisdiction, the plaintiff must establish all three elements. *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990).

Importantly, Article III requires a concrete, particularized injury in fact that is fairly traceable to the defendant and likely to be redressed by a favorable decision. *Lujan*, 504 U.S. at 560–61. That requirement does not relax in putative class actions: "standing is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431–32 (2021) (citations omitted) (cleaned up); *Mangan v. Robbins*, No. CIV.A. 12-2462, 2013 WL 460289, at *3 (E.D. Pa. Feb. 7, 2013). The fact that a suit is a class action "adds nothing to the question of standing," because "even named plaintiffs who represent a class must allege and show that they personally have been injured." *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976) (quoting

7

*Warth v. Seldin*, 422 U.S. 490, 502 (1975)); *see also, e.g.*, *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974).

The Third Circuit has consistently applied these precedents, recognizing that, "[i]n the context of a class action, Article III must be satisfied 'by at least one named plaintiff.'" *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 359 (3d Cir. 2015) (quoting *McNair v. Synapse Grp. Inc.*, 672 F.3d 213, 222, n. 9 (3d Cir. 2012)). Thus, "'[i]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class.'" *Id.* (quoting *O'Shea*, 414 U.S. at 494); *see also, e.g.*, *Finkelman*, 810 F.3d at 195 ("Absent standing on the part of the named plaintiffs, we must dismiss a putative class action for lack of subject matter jurisdiction.").

It is no surprise, then, that a named plaintiff cannot proceed on a theory of injury that he does not *personally* claim to suffer. *Finkelman v. Nat'l Football League* illustrates this principle. There, a plaintiff sued the NFL, claiming that the NFL's ticket policy injured him by preventing him from successfully purchasing a ticket at face value in the League's ticket lottery. 810 F.3d at 197. The district Court found that—because the plaintiff had not actually *entered* the ticket lottery—he lacked Article III standing to challenge it, and the Third Circuit agreed. *Id.* at 198. As the Court of Appeals explained, "any harm that Finkelman suffered is properly attributed not to the NFL, but rather to his own decision not to enter the ticket lottery." *Id*. The court further held that because the plaintiff himself lacked standing, he could not sue on behalf of a class of others who believed they had been injured by the NFL's ticket policy. *Id*. at 195.

Numerous other cases also show that a plaintiff has no standing to bring claims on behalf of a class when she did not suffer the concrete, particularized harm; traceable to the defendants; and redressable through the courts for which the class seeks to recover. For instance, in *In re Niaspan*

8

*Antitrust Litigation*, end-payor plaintiffs asserted a nationwide array of state-law claims tied to purchases or reimbursements of the drug Niaspan. 2015 WL 8150588, at *1 (E.D. Pa. Dec. 8, 2015). The court dismissed all state-specific claims arising from laws of states where no named plaintiff resided or made Niaspan purchases/reimbursements for lack of Article III standing. *Id*. at *2. The court explained the requirement that "at least one named plaintiff has Article III standing to pursue each claim plaintiffs assert," and emphasized that a plaintiff who lacks the personalized, redressable injury to sue in his own right "would also lack standing to assert similar claims on behalf of a class." *Id*. at *3.

Here, the First Amended Complaint never alleges that Maglietta, Reid, or Victorious is owed compensation for signing the America PAC petition.[3] Instead, the only plaintiff-specific facts concern referrals. Maglietta alleges that he "<u>referred</u> many voters" and "was not paid the full promised amounts <u>for these referrals</u>." First. Am. Compl. at 6, ¶¶ 24–25 (emphases added). Reid likewise alleges unpaid referrals and "estimates that he has not been paid at least several thousand dollars he is owed <u>for his referrals</u>." *Id.* at 6, ¶¶ 26–27 (emphasis added). Victorious similarly alleges that he "was not paid the full promised amounts <u>for these referrals</u>." *Id.* at 6, ¶¶ 28–29 (emphasis added). None alleges that any signer payment was withheld (in fact, no Plaintiff affirmatively alleges having signed the petition *at all*). Under *O'Shea*, *Finkelman* and *Niaspan*, a plaintiff who does not claim to have suffered an injury cannot satisfy Article III on behalf of a class with respect to such injury.

---

[3] As discussed in footnote 1, *supra*, only registered voters in Pennsylvania were ever afforded the opportunity to earn for their signatures alone. Accordingly, even if Plaintiffs Reid and Victorious had pled that they signed the petition, they would have no injury and no Article III standing to seek recovery of signature payments they were never entitled to.

The class allegations only deepen the defect. Plaintiffs seek certification of a "signer" class—defined as "[a]ll persons registered to vote in a swing state[4] when they signed the America PAC petition who have not received the agreed-upon payments from Defendants." First. Am. Compl. at 7, ¶ 2. Yet none of the named plaintiffs fall within that definition. Their own allegations are confined to referrals, and they admit they received at least some referral payments. *Id.* at 6, ¶¶ 25, 27, 29. Article III does not permit them to serve as representatives for a class premised on a different injury than the one they personally claim to have suffered. *Finkelman* and *Niaspan* make clear that when no named plaintiff experiences the specific injury tied to a claim, those claims must be dismissed for lack of standing.

For the avoidance of any doubt, Defendants acknowledge the Court's prior observation in its Memorandum Opinion that earlier pleadings could be construed—at that stage and in Plaintiffs' favor—to allege nonpayment for both signatures and referrals. *See* Mem. Op. 8 n.6, ECF No. 36 (construing the allegation that "Defendants have since failed to pay Plaintiffs and Class Members in full for their signatures and referrals" as encompassing both). With deference to the Court's reading of the Original Complaint's allegations, the operative First Amended Complaint merits reconsideration of this issue in light of its structure and plaintiff-specific facts, which demonstrate a fundamental standing deficiency.

Critically, the Court's prior footnote focused on the catch-all language that has been repeated in ¶ 4 here—"Defendants have since failed to pay Plaintiffs and Class Members in full for their signatures and referrals" (First. Am. Compl. at 2, ¶ 4)—but did not address this allegation in the

---

[4] Again, only registered voters in Pennsylvania were ever given the opportunity to earn for their signatures alone. Accordingly, Plaintiffs' purported class reaching "[a]ll persons registered to vote in a swing state," is overbroad and encompasses individuals who have no Article III standing to pursue such earnings.

context of the immediately preceding ¶ 3 (also repeated here), which employs a disjunctive "or" that introduces ambiguity regarding Plaintiffs' alleged injuries: "Plaintiffs and Class Members accepted Defendants' offers by signing *or* successfully referring Pennsylvania registered voters to the America PAC petition" (First. Am. Compl. at 2, ¶ 3, emphasis added). This "or" signals that acceptance (and thus injury) could stem from *either* signing *or* referring—not necessarily both. Given that ambiguity, it is necessary to look at the specific allegations regarding the alleged harm suffered by Plaintiffs Maglietta, Reid, and Victorious in the body of the First Amended Complaint, which make clear their only alleged injuries are non-payments for referrals. *Id.* ¶¶ 24–29.

Without a pled signer injury for Maglietta, Reid, or Victorious, they lack standing to pursue those claims individually or on behalf of that putative class. Accordingly, this Court must dismiss all signer-based injury theories and signer-class allegations here.

### B. The First Amended Complaint should be dismissed under Rule 12(b)(6) because Plaintiffs fail to state claims upon which relief could be granted.

Dismissal is warranted under Federal Rule of Civil Procedure 12(b)(6) when a plaintiff fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To survive dismissal, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted) (cleaned up).

As the Third Circuit has explained:

> Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps. First, it must take note of the elements the plaintiff must plead to state a claim. Second, it should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, when there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (citations omitted). Mere restatements of the elements of a claim are not entitled to the assumption of truth. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) (citation omitted) (cleaned up).

### C. Plaintiffs fail to state a claim for breach of contract or promissory estoppel because they do not allege facts that could plausibly support any unmet duty to pay.

Under Federal Rule of Civil Procedure 9(c), general averments that conditions precedent have been satisfied are sufficient to survive dismissal for failure to state a claim. Fed. R. Civ. P. 9(c). But even where conditions precedent are generally alleged, Rule 9(c) does not dispense with the requirement that allegations be plausible on their face. *Twombly*, 550 U.S. at 555–57, 570; *Iqbal*, 556 U.S. at 678–79; *Connelly*, 809 F.3d at 787. Under Pennsylvania law, the nonoccurrence of a condition precedent means the promisor's duty does not arise, so neither a breach claim nor a promissory estoppel claim can lie. *See, e.g.*, *Chemtech Int'l, Inc. v. Chem. Injection Techs., Inc.*, 247 F. App'x 403, 406, n.1 (3d Cir. 2007) (holding in breach of contract dispute that, notwithstanding Rule 9(c), "[a] complaint that alleges a breach of contract without averring compliance with conditions precedent does not state a valid breach of contract claim"); *Chand v. Merck & Co.*, No. CV 19-0286, 2019 WL 3387056, at *4 (E.D. Pa. July 26, 2019) (noting that Pennsylvania courts have refused to apply the promissory estoppel doctrine to contingent offers) (citation omitted); *see also Franklin Interiors v. Wall of Fame Mgmt. Co.*, 511 A.2d 761, 762 (Pa. 1986).

In deciding Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint, the Court held that Plaintiffs may satisfy Rule 9(c) by generally alleging that conditions precedent to contract formation occurred. Defendants note the Court's ruling and do not re-urge their arguments on a point that the Court has already decided. Defendants do, however, raise a different issue—namely, that even in generally alleging satisfaction of conditions precedent, a plaintiff still must satisfy Rule 12(b)(6)'s requirement that such averments be *plausible*. *See, e.g.*, *Connelly*, 809 F.3d at 787. Here, the pleadings negate a plausible finding of any satisfaction of conditions precedent.

Both breach of contract and promissory estoppel claims require a showing of a promise by the party to be charged, and satisfaction of those conditions by the plaintiff. *See, e.g.*, *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225 (3d Cir. 2003) (breach of contract); *Sullivan v. Chartwell Inv. Partners, LP*, 873 A.2d 710, 717–18 (Pa. Super. 2005) (promissory estoppel). Here, Plaintiffs cannot plausibly allege—even generally—that all conditions precedent were satisfied. That is because entitlement to any referrer payment was contingent on events outside Plaintiffs' control, that they would have no basis to know were satisfied. These include whether a person they referred signed the petition, was an Eligible Voter, and identified the Plaintiff in the petition's "referrer" field.

Plaintiffs do not dispute that these are requirements to earn referral payments. But the First Amended Complaint pleads no non-conclusory facts that could plausibly support a finding that these events (outside of their control, and subject to the independent actions of others) occurred. It identifies no estimation of successful referrals or instances where Plaintiffs confirmed a verified Referee listed them as Referrers but nevertheless were not paid. Plaintiffs state only that they were "paid some referrals," and offer wholly unsupported, nonspecific, unadorned allegations that other moneys are owed. The vague and speculative nature of these claims – presupposing that numerous

13

verified Eligible Voters signed the petition and listed a Plaintiff as their Referrer without any plausible basis for such a belief – underscores that Plaintiffs cannot plausibly allege that such conditions were satisfied. *See, e.g.*, *Iqbal*, 556 U.S. at 678 (case should be dismissed under Rule 12(b)(6) if it "tenders naked assertions devoid of further factual enhancement.").

A contractual duty to pay does not arise absent satisfaction (or excuse) of the stated preconditions. *Chemtech*, 247 F. App'x at 406, n.1; *see also Bricklayers & Allied Craftworkers Loc. 1 of Pa/De v. ARB Constr., Inc.*, No. CV 13-3883, 2016 WL 1161528, at *6 (E.D. Pa. Mar. 23, 2016) ("A condition precedent is a 'condition which must occur before a duty to perform under a contract arises.'") (citations omitted) (cleaned up). And promissory estoppel cannot rest on a promise untethered from those contingencies. *Chand*, 2019 WL 3387056, at *4. Accordingly, Counts I and II should be dismissed as to all Defendants under Rule 12(b)(6).

**D. Plaintiffs' breach of contract and promissory estoppel claims should be dismissed as to Mr. Musk specifically because Plaintiffs plead no privity or clear personal promise, and no facts that could justify the extraordinary remedy of piercing the corporate veil.**

This lawsuit arises wholly out of America PAC's petition program. Yet Plaintiffs posit that Mr. Musk is *personally* liable for the difference between the referral payments they expected and what they actually received. Unlike the concurrently brought *Doe v. America PAC* case also before this Court, here Plaintiffs do not even proffer the theory that Mr. Musk was an "agent or officer" of America PAC. First Amend. Compl. ¶ 24. Rather, Plaintiffs' entire theory of liability against Mr. Musk rests solely on the fact that Mr. Musk promoted the petition on X.

Such allegations are wholly insufficient to state a contract or estoppel claim against Mr. Musk. "It is fundamental contract law that one cannot be liable for a breach of contract unless one is a party to that contract." *Garcia-Valentie v. McKibbin*, No. CIV.A. 06-5097, 2007 WL 2022067, at *3 (E.D. Pa. July 9, 2007); *Ismail v. Dominion Energy, Inc.*, No. CV 19-1093, 2022 WL 990843,

at *8 (E.D. Pa. Apr. 1, 2022), *aff'd*, No. 22-1760, 2022 WL 15400031 (3d Cir. Sept. 1, 2022) ("Only a party to a contract can be liable for breach of that contract"). Likewise promissory estoppel requires "an express promise *between the promisor and the promisee*." *MRO Corp. v. Humana Inc.*, 383 F. Supp. 3d 417, 423 (E.D. Pa. 2019) (emphasis added). Plaintiffs plead no privity, no guaranty, no individual promise, and no words of personal assent to a contract or express promise from Mr. Musk. Rather, they allege statements about America PAC's Program. Accordingly, Plaintiffs' vaguely pled promotion-based theory of individual liability must be rejected as a matter of law.

Moreover, even if Plaintiffs offered some argument to attempt to pierce America PAC's corporate veil and hold Mr. Musk personally liable (which they have not), this would not establish personal liability on Mr. Musk's part, for at least two reasons. First, Mr. Musk is not an officer of America PAC.[5] Second, "[i]t is black letter law in Pennsylvania that a corporation is a separate and distinct entity from its officers or shareholders," and "[i]n a breach of contract action, the general rule is that a corporate officer … may not ordinarily be held personally liable."[6] *In re Wolf*, 556 B.R. 676, 686–87 (Bankr. E.D. Pa. 2016), *aff'd*, 573 B.R. 179 (E.D. Pa. 2017), *aff'd*, 739 F. App'x 165 (3d Cir. 2018). In Pennsylvania and the Third Circuit, courts begin with a "strong presumption" in favor of corporate separateness and "any court must start from the general rule that the corporate entity should be recognized and upheld, unless specific, unusual

---

[5] America PAC is a Virginia nonstock corporation in good standing (Entity ID 11705403; formed June 4, 2024), with a registered agent in Richmond, Virginia. America PAC's officers and directors are publicly viewable by searching the Virginia State Corporations Commission website, https://cis.scc.virginia.gov/EntitySearch/Index, for entity name "America PAC" or entity ID 11705403. These publicly available corporate filings demonstrate that Mr. Musk is not, in fact, a director or officer of America PAC.

[6] Moreover, to the extent a plaintiff invokes officer "participation" to reach an individual, that doctrine sounds in tort and does not impose personal liability on corporate contracts. *Donsco, Inc. v. Casper Corp.*, 587 F.2d 602, 606 (3d Cir. 1978).

circumstances call for an exception" *Lumax Indus., Inc. v. Aultman*, 669 A.2d 893, 895–96 (Pa. 1995); *Zubik v. Zubik,* 384 F.2d 267, 273 (3d Cir.1967) (citations omitted) (cleaned up).

In Pennsylvania, piercing the corporate veil is "an extraordinary remedy and will only be employed in exceptional circumstances." *Brown v. Johnson & Johnson*, 64 F. Supp. 3d 717, 725 (E.D. Pa. 2014); *Labar Vill. Cmty. Ass'n, Inc. v. VFG-LaBar, L.L.C.*, No. CV 3:08-1010, 2008 WL 11367896, at *3 (M.D. Pa. Aug. 1, 2008). Courts in the Third Circuit only pierce the corporate veil where the entity is "little more than a legal fiction," assessed through factors such as undercapitalization, failure to observe corporate formalities, siphoning of funds, nonfunctioning officers, and use of the corporation as a façade. *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 484–85 (3d Cir. 2001); *Lumax*, 669 A.2d at 895–96. "Such a burden is notoriously difficult for plaintiffs to meet." *Pearson*, 247 F.3d at 485.

The First Amended Complaint does not even attempt to plead facts that could justify piercing the corporate veil here. It alleges no undercapitalization, commingling, failure to observe formalities, siphoning of funds, nonfunctioning officers, absence of records, or use of any entity as a façade to perpetrate fraud or injustice. Plaintiffs do not allege anything that ties Mr. Musk to any personal contractual obligation, or to a clear, definite personal promise to pay Plaintiffs. They allege only that Mr. Musk founded America PAC (First Amend. Compl. at 3, ¶ 13) and that he promoted the Program on X (*id.* at 4–5, ¶¶ 18–20; image at page 5). Those assertions, taken in the light most favorable to Plaintiffs, cannot sustain a claim for breach of contract or promissory estoppel against Mr. Musk.

Because Plaintiffs allege no personal undertaking by Mr. Musk and no well-pled veil-piercing facts, Counts I (breach of contract) and II (promissory estoppel) should be dismissed with prejudice as to Mr. Musk.

## IV. **Conclusion**

For the foregoing reasons, the First Amended Complaint should be dismissed in its entirety and with prejudice.

Date: October 3, 2025

*/s/ Matthew H. Haverstick*
Matthew H. Haverstick (No. 85072)
KLEINBARD LLC
Three Logan Square, 5th Floor
1717 Arch Street
Philadelphia, PA 19103
Phone: (215) 568-2000
Fax: (215) 568-0140
Eml: mhaverstick@kleinbard.com

*/s/ Anne Marie Mackin*
Chris K. Gober*
Texas State Bar No. 24048499
Andy Taylor*
Texas State Bar No. 19727600
Anne Marie Mackin*
Texas State Bar No. 24078898
Jesse Vazquez*
Florida State Bar No.1013573
Lex Politica PLLC
#129 7415 SW Parkway
Bldg. 6, Ste. 500
Austin, Texas 78735
Telephone: (512) 354-1785
cgober@lexpolitica.com
ataylor@ataylorlaw.com
amackin@lexpolitica.com
jvazquez@lexpolitica.com

**Attorneys for Defendants**

*Admitted* pro hac vice