# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANTHONY MAGLIETTA, STEVEN REID, and JERRY VICTORIOUS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>AMERICA PAC and ELON MUSK,<br><br>Defendants. | Case No. 5:25-cv-02364-WB |

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

**Table of Contents**

I.      INTRODUCTION .......................................................................................... 1

II.     FACTUAL AND PROCEDURAL BACKGROUND ......................................... 3

III.    ARGUMENT ............................................................................................... 4

        A.    Legal Standard ................................................................................. 4

        B.    Plaintiffs Have Article III Standing For All Claims Alleged ................. 5

        C.    Plaintiffs Have Stated Claims Against Defendants for Breach of Contract and
              Promissory Estoppel ........................................................................ 7

              1.    The Court Should Reject Defendants' Attempt to Rehash its Breach of
                    Contract and Promissory Estoppel Arguments ........................... 7

              2.    Plaintiffs' Breach of Contract and Promissory Estoppel Claims Should
                    Not Be Dismissed as to Elon Musk ....................................... 11

        D.    If Needed, Plaintiffs Can Amend ....................................................... 14

IV.     CONCLUSION ........................................................................................... 14

## <u>Table of Authorities</u>

**CASES**

*Ashcroft v. Iqbal*,
556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)............................................. 2, 4, 9

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)................................................. 2, 9

*Bloom v. Vauclain*,
329 Pa. 460 (1938)............................................................................................ 12

*Burke v. Bachert*,
702 F. Supp. 3d 347 (E.D. Pa. 2023).......................................................... 6, 12

*Cardmone v. Univ. of Pittsburgh*,
253 Pa.Super. 65, 384 A.2d 1228 (1978)............................................................. 9

*Carlson v. Arnot-Ogden Mem'l Hosp.*,
918 F.2d 411 (3d Cir. 1990)............................................................................. 9

*Chand v. Merck & Co., Inc.*,
2019 WL 3387056 (E.D. Pa. July 26, 2019)................................................. 10

*Chemtech Int'l, Inc. v. Chem. Injection Techs., Inc.*,
247 F. App'x 403 ........................................................................................... 8

*Complete Business Solutions Group v. Suess*,
2019 WL 2637731 (E.D. Pa. June 26, 2019)................................................ 5, 7

*Duquense Litho Inc. v. Roberts & Jaworski Inc.*,
443 Pa. Super. 170 (1995).............................................................................. 12

*Eichelberger v. City of Phila.*,
2018 WL 3730691 (E.D. Pa. Aug. 3, 2018) ................................................. 5, 6

*Finkelman v. National Football League*,
810 F.3d 187 (3d Cir. 2016)........................................................................... 7

*Fowler v. UPMC Shadyside*,
578 F.3d 203 (3d Cir. 2009)........................................................................... 6

*GCL, LLC v. Schwab*,
2012 WL 4321972 (E.D. Pa. Sept. 21, 2012) ............................................. 11

*Green v. Interstate Management Services Corp.*,
748 F.2d 827 (3d Cir. 1984)........................................................................... 10

*Hedges v. United States*,
    404 F.3d 744 (3d Cir. 2005).................................................................................. 5

*Hildebrand v. Allegheny County*,
    757 F.3d 99 (3d Cir. 2014)................................................................................ 2, 9

*In re Horizon Healthcare Servs. Inc. Data Breach Litig.*,
    846 F.3d 625 (3d Cir. 2017).................................................................................. 7

*In re Niaspan Antitrust Litig.*,
    2015 WL 8150588 (E.D. Pa. Dec. 8, 2015) ......................................................... 7

*Jarzyna v. Home Props., L.P.*,
    185 F. Supp. 3d 612 (E.D. Pa. 2016) .................................................................. 5

*K7 Design Grp., Inc. v. Five Below, Inc.*,
    540 F. Supp. 3d 508 (E.D. Pa. 2021) ................................................................ 10

*Karl Rove & Co. v. Thornburgh*,
    39 F.3d 1273 (5th Cir. 1994) .............................................................................. 12

*Lei Ke v. Drexel Univ.*,
    2013 WL 5508672 (E.D. Pa. Oct. 4, 2013)........................................................... 6

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)............................................................................................. 5

*Murray v. Haggerty*,
    2006 WL 5534079 (Pa. Ct. Com. Pl. Oct. 19, 2006).................................... 2, 12

*Myers v. Am. Dental Ass'n*,
    695 F.2d 716 (3d Cir. 1982.)........................................................................... 2, 11

*Neale v. Volvo Cars of N. Am., LLC*,
    794 F.3d 353 (3d Cir. 2015)................................................................................. 7

*Pearson v. Component Technology Corp.*,
    247 F.3d 471 (3d Cir. 2001)............................................................................... 13

*Phillips v. Cnty. of Allegheny*,
    515 F.3d 224 (3d Cir. 2008)............................................................................... 14

*Publicker Indus., Inc. v. Roman Ceramics Corp.*,
    603 F.2d 1065 (3d Cir. 1979)............................................................................. 13

*Regent Ins. Co. v. Strausser Enterprises, Inc.*,
    814 F. App'x 703 (3d Cir. 2020) .................................................................... 6, 12

*Rice v. First Energy Corp.*,
      339 F. Supp. 3d 523 (W.D. Pa. Sept. 7, 2018) .................................................. 13

*RRX Indus., Inc. v. Lab-Con, Inc.*,
      772 F.2d 543 (9th Cir. 1985) ........................................................................... 13

*Schrob v. Catterson*,
      948 F.2d 1402 (3d Cir. 1991) ...................................................................... 4, 5

Sessions v. Dimaya,
      584 U.S. 148 (2018) .......................................................................................... 8

*Sourovelis v. City of Philadelphia*,
      246 F. Supp. 3d 1058 (E.D. Pa. Mar. 30, 2017) ............................................. 11

*Spokeo, Inc. v. Robins*,
      578 U.S. 330 (2016) ........................................................................................... 5

*Stein v. Fenestra Am., L.L.C.*,
      2010 WL 816346 (E.D. Pa. Mar. 9, 2010) ...................................................... 14

*Straup v. Times Herald*,
      283 Pa. Super. 58 (1980) ................................................................................. 10

*Trustees of Nat'l Elevator Indus. Pension v. Lutyk*,
      140 F. Supp. 2d 447 (E.D. Pa. 2001) .............................................................. 13

*Wortex Mills v. Textile Workers Union of Am., C.I.O.*,
      380 Pa. 3 (1954) .............................................................................................. 12

## RULES

Fed. R. Civ. P. 12 ............................................................................................... 2, 11

Fed. R. Civ. P. 15 ................................................................................................... 14

Fed. R. Civ. P. 9 ........................................................................................... 2, 7, 8, 9

## I.    INTRODUCTION

Plaintiffs' First Amended Complaint differs from their initial Complaint only in that it removes Group America, LLC as a Defendant, given that the Court dismissed that Defendant, and clarifies that Plaintiffs' promissory estoppel claim is brought in the alternative to their breach of contract claim. (First Am. Compl., Dkt. 28.)  Nevertheless, in their motion to dismiss Defendants raise a bevy of arguments, all of which have either already been considered and rejected by the Court, or which Defendants failed to raise in their first motion to dismiss. The Court should deny their scattershot motion in full. The First Amended Complaint lays out sufficiently detailed allegations supporting Plaintiffs' claims for breach of contract and promissory estoppel against Defendants America PAC and Elon Musk. In short, Defendants offered to pay Pennsylvania voters for signing the America PAC petition—and for referring others to do the same. Plaintiffs accepted the offer by performing the work and expected to be paid. Defendants took the benefit of their performance but refused to pay.

 First, Defendants argue that Plaintiffs lack Article III standing to represent voters who were not paid for signing the Petition, because Plaintiffs themselves did not suffer that injury. In fact, the Court has already held that Plaintiffs' allegations established standing on this claim, *see* Memorandum Opinion at pp. 8-9 n.6, Dkt. 25, and there is no basis for the Court to reconsider this conclusion.

Second, Defendants assert that Plaintiffs fail to state a claim for breach of contract and promissory estoppel arguments, once again rehashing arguments that the Court has already rejected. Defendants insist that Plaintiffs failed to adequately allege that certain conditions precedent to contract formation occurred (i.e., that Plaintiffs did not allege that all requirements for payment for Petition signatures or referrals had been met), but the Court has already held that Plaintiffs had already made sufficient general allegations of conditions precedent pursuant to

1

Fed. R. Civ. P. 9(c). (Memorandum Opinion at pp. 20-21, Dkt. 25.) Defendants argue that

Plaintiffs had not *plausibly* alleged the conditions precedent, but Rule 9(c) does not require the

kind of allegations that would satisfy *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173

L.Ed.2d 868 (2009), and *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167

L.Ed.2d 929 (2007), as the Third Circuit held in *Hildebrand v. Allegheny County*, 757 F.3d 99,

112 (3d Cir. 2014).

Defendants also argue that the breach of contract and promissory estoppel claims against

Elon Musk must be dismissed because Plaintiffs did not allege a personal promise by him, and

Plaintiffs cannot pierce the corporate veil. The Court should not even consider this argument

because it is precluded by Fed. R. Civ. P. 12(g)(2). Defendants failed to raise this argument in its

first motion to dismiss, and they cannot do so now in their second motion to dismiss. *See Myers*

*v. Am. Dental Ass'n*, 695 F.2d 716, 720 (3d Cir. 1982.) Further, Plaintiffs expressly plead

personal promises that Musk posted on Twitter (First Am. Compl. ¶¶ 18-20, Dkt. 25.)

Defendants' argument Plaintiffs cannot pierce the corporate veil also fails for the simple reason

that the First Amended Complaint does not assert that America PAC is a corporation, meaning

that Mr. Musk, as founder of America PAC, as well as an officer and agent, can be held liable for

the conduct that he personally drove. *See Murray v. Haggerty*, 2006 WL 5534079, at *344 (Pa.

Ct. Com. Pl. Oct. 19, 2006). And in any event, Plaintiffs allegations suffice to show that the

corporate veil can be pierced, and the Court should analyze this fact intensive question without a

record developed through discovery.

At this stage, the Court should reaffirm its holding that Plaintiffs' claims can proceed as

pleaded.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

In October 2024, Defendants America PAC, Group America, LLC, and Elon Musk offered to pay registered voters in certain swing states to sign a petition supporting the First and Second Amendments. (First Am. Compl. ¶ 1, Dkt. 28.) The initial payment offer was $47, which was later increased to $100 for voters in Pennsylvania. (First Am. Compl. ¶¶ 1, 15, Dkt. 28.) Defendants also offered the same payment for each successful referral of a registered voter who signed the petition. (First Am. Compl. ¶¶ 2, 16, Dkt. 28.)

This offer was not buried in fine print—it was blasted out across campaign events, social media, and online platforms. (First Am. Compl. ¶¶ 17-21, Dkt. 28.) Elon Musk himself promoted the program on his personal "X" social media account, stating that both the signer and the referrer would be paid $100. (First Am. Compl. ¶ 18-19, Dkt. 28.)

Plaintiffs Anthony Maglietta, Steven Reid, and Jerry Victorious, along with other class members, took Defendants at their word. They signed the petition, referred others to do the same, and expected to be compensated. (First Am. Compl. ¶¶ 3, 22, 24, 26, 28, Dkt. 28.) But Defendants failed to pay them in full—or at all. (First Am. Compl. ¶¶ 24-30, Dkt. 28.)

Plaintiffs filed this class action on May 8, 2025, asserting claims for breach of contract and promissory estoppel. (Compl., Dkt. 1.) They allege they relied on Defendants' promises, performed the requested work, and suffered harm when those promises were broken. (First Am. Compl. ¶¶ 3-4, 22-29, Dkt. 28.) Their claims are related to another matter before this Court: *Doe, et al. v. America PAC, et al.*, No. 2:25-cv-01691-WB (E.D. Pa.).[1]

On July 18, 2025, Defendants moved to dismiss Plaintiffs' Complaint in its entirety (Dkt. 22-1) as it also did in *Doe*. On August 26, 2025, the Court issued a Memorandum Opinion

---

[1]     *Doe* is limited to Pennsylvania, while this matter encompasses all states in which individuals signed the petition or referred others to sign and were not paid for the signatures.

granting in part and denying in part Defendants' motion to dismiss both in this matter and in *Doe*. (Memorandum Opinion, Dkt. 25.) First, the Court held that Plaintiffs had not adequately pleaded their claims against Group America to establish the causation element of standing and thus dismissed Group America as a defendant without prejudice. (Memorandum Opinion at p. 13, Dkt. 25.) Second, the Court dismissed Plaintiffs' promissory estoppel claim without prejudice because Plaintiffs had not pleaded it in the alternative, but granted Plaintiffs leave to amend. (Memorandum Opinion at p. 23, Dkt. 25.) Third, the Court dismissed the Pennsylvania Wage Payment and Collections Law ("WPCL") claim that was pleaded in *Doe* but not in this matter. (Memorandum Opinion at p. 23-27, Dkt. 25.)

On September 9, 2025, Plaintiffs filed their Fist Amended Complaint (Dkt. 28), which simply removes Group America, LLC as a Defendant (because Plaintiffs in this matter did not allege a WPCL claim), and clarifies that Plaintiffs' promissory estoppel claim is alleged in the alternative. (First Am. Compl., Count II.) Defendants filed their Motion to Dismiss Under Rules 12(b)(1) and 12(b)(6) on October 3, 2025 (Dkt. 31-1).

## III.    ARGUMENT

### A.    Legal Standard

To survive a motion to dismiss, a complaint needs only enough factual matter—taken as true—to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the plaintiff alleges facts that allow the Court to reasonably infer the defendant is liable for the alleged misconduct. *Id.*

"In deciding a motion to dismiss, all well-pleaded allegations of the complaint must be taken as true and interpreted in the light most favorable to the plaintiffs, and all inferences must be drawn in favor of them." *Schrob v. Catterson*, 948 F.2d 1402, 1408 (3d Cir. 1991). "A complaint can only be dismissed if it appears to a certainty that no relief could be granted under

any set of facts which could be proved." *Id.* (internal citation and quotation marks omitted). "The

defendant bears the burden of showing that no claim has been presented." *Hedges v. United*

*States*, 404 F.3d 744, 750 (3d Cir. 2005).

### B.    Plaintiffs Have Article III Standing For All Claims Alleged

Defendants argue that Plaintiffs lack Article III standing to sue for alleged signature

nonpayment, and as to Defendant Group America. In order to establish standing, a plaintiff must

show:

> (1) the plaintiff suffered an injury in fact, i.e., an invasion of a "legally protected interest"
> that is "concrete and particularized," and "actual or imminent"; (2) a causal connection
> exists between the injury and the complained-of conduct, namely, that the injury is fairly
> traceable to the challenged action of the defendant and not the result of the independent
> action of some third party; and, (3) it is "likely," as opposed to "merely speculative," that
> the injury will be redressed by a favorable decision.

Memorandum Opinion at p. 8, Dkt. 25 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555,

560 (1992)); *see also Spokeo, Inc. v. Robins*, 578 U.S. 330, 338-39 (2016).

Defendants argue that Plaintiffs lack standing to represent eligible voters who were not

paid for signing the Petition, because Plaintiffs themselves did not suffer that particular injury.

As they must, Defendants acknowledge that the Court has already considered and rejected this

argument. (Defendants' Motion at pp. 12-13, Dkt. 43-1.) Thus, while Defendants style their

motion as a motion to dismiss, in fact, the motion seeks reconsideration. Motions for

reconsideration "are highly disfavored by courts and are granted sparingly." *Complete Business*

*Solutions Group v. Suess*, 2019 WL 2637731, at *2 (E.D. Pa. June 26, 2019) (citing *Eichelberger*

*v. City of Phila.*, 2018 WL 3730691, at *1 (E.D. Pa. Aug. 3, 2018)). Moreover, "[m]ere

dissatisfaction with a court's ruling will not warrant reconsideration." *Id.* (quoting *Jarzyna v.*

*Home Props., L.P.*, 185 F. Supp. 3d 612, 622 (E.D. Pa. 2016)). As such, "[c]ourts will consider

an issue only 'when there has been an intervening change in the controlling law, when new

evidence has become available, or when there is a need to correct a clear error or prevent

manifest justice.'" *Eichelberger*, 2018 WL 3730691, at *1 (quoting *Lei Ke v. Drexel Univ.*, 2013

WL 5508672, at *3 (E.D. Pa. Oct. 4, 2013)). There is no justification for reconsidering the

Court's rejection of Defendants' argument in its Memorandum Opinion.

More specifically, footnote 6 of the Court's Memorandum Opinion states as follows:

> Defendants argue that "Plaintiffs lack standing to represent a class of Eligible Voters who
> were not paid for signing the petition because Plaintiffs allege only nonpayment for
> making referrals" and have not claimed that "they signed the petition but were not paid
> for doing so[.]" But Defendants' contention is belied by allegations in both the *Doe*
> and *Maglietta* Complaints, which explicitly state: "Plaintiffs and Class Members
> accepted Defendants' offers by signing or successfully referring Pennsylvania registered
> voters to the America PAC petition. Defendants have since failed to pay Plaintiffs and
> Class Members in full for their signatures and referrals." Although those paragraphs do
> not identify each individual by name, given the procedural posture, the Court will
> interpret the allegations in the light most favorable to Plaintiffs (i.e., that Doe, Pisor,
> Maglietta, Reid, and Victorious all signed the Petition and have yet to receive full
> payment therefor). *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).
> Accordingly, Defendants' Rule 12(b)(1) Motion shall be denied in this respect.

(Memorandum Opinion at pp. 8-9 n.6, Dkt. 25.)[2] The Court came to this conclusion after

Plaintiffs explained that they "allege that Defendants promised to pay them and other class

members for signing the America PAC petition and referring registered voters in swing states to

do the same" and that "Defendants have since failed to pay Plaintiffs."[3] (Plaintiffs' Opposition to

---

[2]     Defendants' request for reconsideration is grounded on purported ambiguity in Plaintiffs'
First Amended Complaint, arguing that the use of the word "or" ¶ 4 could indicate either that
injury could stem from "*either* signing *or* referring – not necessarily both. (Defendants' Motion
at p. 10, Dkt. 31-1.) It is difficult to parse why, according to Defendants, that distinction would
impact standing. And in any event, at the motion to dismiss stage, ambiguities in the complaint
must be construed in favor of Plaintiffs, as the Court has acknowledged already. (Memorandum
Opinion at p. 9 n.6, Dkt. 25 (citing *Fowler*, 578 F.3d at 210-11).)

[3]     Defendants assert that payments for signing the Petition (as opposed to referring others to
sign the petition) a petition signature was available only to eligible voters in Pennsylvania and
not in other states. *See Burke v. Bachert*, 702 F. Supp. 3d 347, 364 (E.D. Pa. 2023) ("[O]n a
motion to dismiss, 'it is the allegations within the four corners of the complaint that govern.'")
(quoting *Regent Ins. Co. v. Strausser Enterprises, Inc.*, 814 F. App'x 703, 708 (3d Cir. 2020))

Defendants' Motion to Dismiss at p. 11, Dkt. 23-1.)[4]

Moreover, Plaintiffs reiterate that the Third Circuit has made clear that Article III "is satisfied so long as a class representative has standing, whether in the context of a settlement or litigation class." *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 362 (3d Cir. 2015). Plaintiffs' role as proposed class representatives imposes no additional standing requirements. *See In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 634, n.11 (3d Cir. 2017) ("Once Article III standing 'is determined vis-à-vis the named parties . . . there remains no further separate class standing requirement in the constitutional sense.'").[5]

### C. Plaintiffs Have Stated Claims Against Defendants for Breach of Contract and Promissory Estoppel

#### 1. The Court Should Reject Defendants' Attempt to Rehash its Breach of Contract and Promissory Estoppel Arguments

Once again, Defendants ask the Court to reconsider its holding in its Memorandum Opinion, this time challenging the ruling that Plaintiffs satisfied Fed. R. Civ. P. 9(c) by alleging generally that conditions precedent to contract formation occurred. To reiterate, Defendants' mere dissatisfaction with the Court's Memorandum Opinion does not justify reconsideration. *See Complete Business Solutions Group*, 2019 WL 2637731, at *2.

---

[4]    Defendants' reliance on *Finkelman v. National Football League*, 810 F.3d 187, 195-98 (3d Cir. 2016), is misplaced. In *Finkelman*, the plaintiff in question could not establish standing for the purposes of any claim and therefore could not advance the claims of a putative class. Such is not the case here. Similarly, Defendants' citation to *In re Niaspan Antitrust Litig.*, 2015 WL 8150588, at *3 (E.D. Pa. Dec. 8, 2015), does little to advance its argument. That case simply recognizes "that at least one named plaintiff must have Article III standing in order to assert claims on behalf of absent class members." *Id.* Here, the Court has already held that as pleaded, Plaintiffs have standing to assert a claim that they were not paid for signing the Petition, and thus *In re Niaspan* leads to the conclusion that Plaintiffs have standing to pursue that class claim. (Memorandum Opinion at pp. 8-9 n.6, Dkt. 25.)

[5]    Defendants are, in substance, raising a typicality argument under Rule 23 – an issue that is properly reserved for class certification, not a motion to dismiss.

Defendants claim that they "note the Court's ruling and do not re-urge their argument on a point that the Court has already decided," but that is not the case. Here, Defendants argue a "different issue" that even though Plaintiffs have generally alleged satisfaction of conditions precedent, they have not done so in a way that is plausible. (Defendants' Motion at pp. 16-17, Dkt. 43-1.) But the Court has already held that Plaintiffs' allegations sufficed:

> For instance, Defendants contend that Plaintiffs did not allege that America PAC failed to remit payments for valid or successful referrals—just that the referrals themselves were successful. As Defendants put it, "in the absence of allegations sufficient to establish that Plaintiffs complied with the terms of the petition as to their allegedly unpaid referrals—and that America PAC failed to pay Plaintiffs for valid (or, in Plaintiffs' words, "successful") referrals – Plaintiffs have not stated that America PAC breached any contract, or that Plaintiffs themselves upheld their end of the bargain." But to quote Justice Kagan, Defendants are, with that argument, "slicing the baloney mighty thin." Sessions v. Dimaya, 584 U.S. 148, 161 (2018).

(Memorandum Opinion at p. 21 n.8, Dkt. 25.) Further, the Court has already rejected Defendants' insistence that Fed. R. Civ. P 9(c) requires more detail regarding the conditions precedent:

> [A]t this stage, to the extent that they are required, general averments regarding conditions precedent are sufficient under Rule 9. See Fed. R. Civ. P. 9 ("In pleading conditions precedent, it suffices to allege generally that all conditions precedent have occurred or been performed."); *cf.* [*Chemtech Int'l, Inc. v. Chem. Injection Techs., Inc.,* 247 F. App'x 403, 405 n.1] (observing that, in light of Rule 9, the "omission" of any allegations regarding a plaintiff's compliance with conditions precedent would be fatal to a breach of contract claim at the pleading stage). Here, the Plaintiffs have not omitted reference to successful completion of any conditions precedent, they have just not done so in the manner in which the Defendants think they should; but, that is not the standard by which a court must sieve through the allegations on a Motion to Dismiss.

(Memorandum Opinion at pp. 20-21, Dkt. 25.)

Now, Defendants argue that Plaintiffs have not plausibly alleged that the conditions precedent occurred because Plaintiffs could not have known things like whether the signers were eligible voters and whether the signer listed Plaintiffs as referrers. Aside from the fact that it is a factual dispute whether or not Plaintiffs knew those things, the Court need not apply the

plausibility requirement of *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868

(2009), and *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929

(2007), to this aspect of Plaintiffs' pleadings. *See Hildebrand v. Allegheny County*, 757 F.3d 99,

112 (3d Cir. 2014) ("The pleading of conditions precedent is governed by Rule 9(c), not Rule

8(a). Neither *Iqbal* nor *Twombly* purport to alter Rule 9. We see no indication that those cases

sought to override the plain language of Rule 9(c), and we therefore conclude that the pleading

of conditions precedent falls outside the strictures of *Iqbal* and *Twombly*.").[6]

Defendants argue that Plaintiffs' promissory estoppel claim (asserted in the alternative)

must be dismissed for much the same reason – that the promise of payment was dependent on

conditions precedent occurring. This argument fails for the same reasons it fails as to the breach

of contract claim. Defendants also claim that the contingent nature of Defendants' promise of

payment requires dismissal of the promissory estoppel claims.

Promissory estoppel applies "where (1) the promisor makes a promise that he reasonably

expects to induce action or forbearance by the promisee, (2) the promise does induce action or

forbearance by the promisee, (3) and injustice can only be avoided by enforcing the promise."

*Carlson v. Arnot-Ogden Mem'l Hosp.*, 918 F.2d 411, 416 (3d Cir. 1990) (citing *Cardmone v.

Univ. of Pittsburgh*, 253 Pa.Super. 65, 74, 384 A.2d 1228, 1233 (1978). Plaintiffs allege all three

elements.

Plaintiffs allege that Defendants promised to pay them and other class members for

signing the America PAC petition and successfully referring Pennsylvania-registered voters to

---

[6]     Additionally, if Defendants were correct, they would be completely insulated from any possible breach of contract action, because Plaintiffs would never be in a position to know if the conditions precedent had occurred. That issue presents a question of fact that must be explored through discovery.

do the same. (First Am. Compl. ¶¶ 1-2, 15-21, Dkt. 28.) That promise induced Plaintiffs to make successful referrals. (First Am. Compl. ¶¶ 22, 24-29, Dkt. 28.) Defendants then refused to pay. (First Am. Compl. ¶ 23, Dkt. 28.) Enforcing the promise is the only way to avoid injustice. These allegations state a valid claim for promissory estoppel.

Defendants' argument that Plaintiffs' reliance was unreasonable because they did not meet the referral program's requirements is contradicted by the allegations. Plaintiffs allege they complied with the conditions for payment, including referring eligible voters and providing necessary information. (First Am. Compl. ¶¶ 3, 24, 26, 28, Dkt. 28.) Defendants' refusal to pay for those referrals is precisely the kind of harm promissory estoppel is designed to remedy.

If there is any doubt about the reasonableness of Plaintiffs' reliance, that is a factual question not properly resolved at the pleading stage. *See K7 Design Grp., Inc. v. Five Below, Inc.*, 540 F. Supp. 3d 508, 513 (E.D. Pa. 2021) ("Justifiable reliance is typically a question of fact for the fact-finder to decide."). At this stage, Plaintiffs have more than plausibly alleged a claim for promissory estoppel.[7]

---

[7]    To the extent that Defendants argue that Plaintiffs' promissory estoppel claim must be dismissed as a matter of law because their promise of payment was contingent, they are incorrect. For example, in *Green v. Interstate Management Services Corp.*, 748 F.2d 827, 830 (3d Cir. 1984), the plaintiffs prevailed on their promissory estoppel claim even though the promise was contingent. The Third Circuit made clear that promissory estoppel is "a flexible doctrine, to be applied . . . . as the equities between the parties preponderate." *Id.* at 831 (quoting *Straup v. Times Herald*, 283 Pa. Super. 58, 71 (1980)). Thus, the court took the contingent nature of the promise into account for determining damages, but did not rule that the plaintiffs could not pursue it as Defendants urge here. Defendants rely on *Chand v. Merck & Co., Inc.*, 2019 WL 3387056, at *2 (E.D. Pa. July 26, 2019), which is easily distinguishable. There, a job offer was contingent on proving work eligibility based on visa status. *See id.* The plaintiff quit her previous job but then the defendant rescinded her job offer due to a problem with her visa. *See id.* While plaintiff argued that she relied to her detriment on the job offer in deciding to leave her previous job and put down a deposit on a new apartment, the visa contingency in the job offer led the court to dismiss her promissory estoppel claim. *See id.* at *4. The circumstances here are much different – Defendants induced Plaintiffs to refer voters to sign the petitions (thereby getting

### 2. Plaintiffs' Breach of Contract and Promissory Estoppel Claims Should Not Be Dismissed as to Elon Musk

For the first time, Defendants argue that the breach of contract and promissory estoppel claims must be dismissed as to Elon Musk, because Plaintiffs have plead no privity or clear personal promise, and Plaintiffs cannot pierce the corporate veil. This argument also fails.

First of all, Defendants could have raised this argument in its first motion to dismiss (Dkt. 28-1) but did not. The argument is thus waived, and the Court should not consider it. Fed R. Civ. P. 12(g)(2) states (subject to a few exceptions not relevant here) that "a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." This rule requires "a party who raises a defense by motion prior to answer to raise all such possible defenses in a single motion", and the defenses "cannot be raised in a second, pre-answer motion." *Myers v. Am. Dental Ass'n*, 695 F.2d 716, 720 (3d Cir. 1982.).  As such, courts routinely find waiver in circumstances such as this one. *See, e.g.*, *Sourovelis v. City of Philadelphia*, 246 F. Supp. 3d 1058, 1078 (E.D. Pa. Mar. 30, 2017) (finding waiver of arguments in a successive motion to dismiss where "Defendants . . . could have (and should have) made those argument in their previous motion to dismiss); *GCL, LLC v. Schwab*, 2012 WL 4321972, at *3 (E.D. Pa. Sept. 21, 2012) (holding that where the defendant "raise[d] arguments in his second motion to dismiss that were not raised in the prior motion to dismiss," the court "will not address the argument that were previously available to the Defendant but were not raised.").

Second, even if the Court considers this argument, it is meritless. The First Amended Complaint sufficiently alleges a breach of contract and promissory estoppel claim directly

---

what Defendants wanted) and only afterward refused to pay. Equity supports a promissory estoppel claim here.

against Elon Musk. For example, ¶ 19 includes a screenshot of a Tweet by Elon Musk stating in relevant part that that "If you're a registered Pennsylvania voter, you & whoever referred you will now get $100 for signing our petition in support of free speech & right to bear arms." (First Am. Compl. ¶ 19, Dkt. 28.) This offer garnered 47.8 million views. (First Am. Compl. ¶ 19, Dkt. 28.) The Court can infer from this Tweet that Mr. Musk drove the entire process and personally made the contractual offer and promise to pay.

Third, while Defendants invoke the difficulty of piercing the corporate veil, nothing in the First Amended Complaint indicates that America PAC is a corporate entity. Instead, Plaintiffs allege that "Defendant America PAC is a political action committee . . . " and that it is registered with the Federal Election Commission "as an independent expenditure-only political committee (Super PAC)." (First Am. Compl. ¶¶ 9-10, Dkt. 28.) Defendants assert (without record support) that America PAC is a nonstock corporation, but the Court should not consider this fact because it exceeds the four corners of the complaint. *See Burke*, 702 F. Supp. 3d at 364; *see also Regent Ins. Co.*, 814 F. App'x at 708. Thus, as the founder of America PAC (Second Am. Compl. ¶ 12, Dkt. 28) and acting as an agent or officer of America PAC, Mr. Musk may be individually liable for its breach of contract and under the doctrine of promissory estoppel. *See Murray*, 2006 WL 5534079, at *344 (holding that an individual "may be found personally liable for a political committee's debts . . . if [he] actually authorized, assented to, or ratified the obligation") (citing *Bloom v. Vauclain*, 329 Pa. 460, 462-63 (1938); *Duquense Litho Inc. v. Roberts & Jaworski Inc.*, 443 Pa. Super. 170, 174 (1995); *Karl Rove & Co. v. Thornburgh*, 39 F.3d 1273, 1284 n.34 (5th Cir. 1994)); *Wortex Mills v. Textile Workers Union of Am., C.I.O.*, 380 Pa. 3, 18 (1954) ("Officer and individual members of a union or other similar unincorporated association are liable for acts which they individually commit or participate in or authorize or

assent to or ratify.") (additional citations omitted).

In any event, Plaintiffs' allegations at this early stage (and without the benefit of any discovery) suffice to establish that corporate veil should be pierced. As the Third Circuit has explained, "under both state and federal common law, abuse of the corporate form will allow courts to employ the 'tool of equity' known as veil-piercing, i.e., disregard of the corporate entity to impose liability on the corporation's shareholders." *Pearson v. Component Technology Corp.*, 247 F.3d 471, 484 (3d Cir. 2001) (quoting *Publicker Indus., Inc. v. Roman Ceramics Corp.*, 603 F.2d 1065, 1069 (3d Cir. 1979)). "Courts have held veil-piercing to be appropriate 'when the court must prevent fraud, illegality, or injustice, or when recognition of the corporate entity would defeat public policy or shield someone from liability for a crime . . . or when 'the parent so dominated the subsidiary that it had not separate existence . . . .'" *Id.* (internal citations omitted); *see also RRX Indus., Inc. v. Lab-Con, Inc.*, 772 F.2d 543, 545 (9th Cir. 1985) (veil-piercing is appropriate when "the personalities of the corporation and individual are no longer separate"). Under Pennsylvania law, resolution of whether the corporate veil can be pierced "is fact based and must be supported by the record", meaning that it is not appropriate to address that the Rule 12 stage. *Rice v. First Energy Corp.*, 339 F. Supp. 3d 523, 536 (W.D. Pa. Sept. 7, 2018) (citing *Trustees of Nat'l Elevator Indus. Pension v. Lutyk*, 140 F. Supp. 2d 447, 457 (E.D. Pa. 2001)).

Here, Mr. Musk was the founder of America PAC and helped perpetuate the conduct that amounts to breach of contract and leads to liability under promissory estoppel. (First Am. Compl. ¶¶ 9-12, 15-30, Dkt. 28.) Mr. Musk seeks to avoid liability for misleading Plaintiffs and putative class members into signing or referring voters to sign the Petition, promising that they would receive payments for doing so. (First Am. Compl. ¶¶ 9-12, 15-30, Dkt. 28.) This

misconduct is exactly the kind of fraud or illegality that justifies piercing the corporate veil. The Court can infer that Musk used America PAC to induce Plaintiffs and putative class members to sign the Petition and refer others to sign, and now attempts to use it as a shield when he never intended to keep up his end of the bargain. At the very least, Plaintiffs are entitled to explore this legal avenue in discovery. *See Stein v. Fenestra Am., L.L.C.*, 2010 WL 816346, at *6 (E.D. Pa. Mar. 9, 2010) (permitting plaintiffs to proceed to discovery on the question of defendants "adherence to corporate formalities, intermingling of corporate assets, and the extent to which each entity used each other to perpetuate a fraud").

### D.    If Needed, Plaintiffs Can Amend

Rule 15 reflects the Federal Rules' liberal amendment policy, instructing courts to "freely give leave" to amend "when justice so requires." Fed. R. Civ. P. 15. The Third Circuit has consistently applied this principle, holding that leave to amend should be granted unless amendment would be futile. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008). If the Court finds that additional factual allegations are necessary, Plaintiffs respectfully request leave to amend.

## IV.    CONCLUSION

For the foregoing reasons, the Court should deny Defendants' motion to strike and motion to dismiss. In the event that the Court dismisses any of Plaintiffs' claims, Plaintiffs respectfully request leave to amend.

Dated: October 24, 2025                    Respectfully submitted,


                                           ANTHONY MAGLIETTA, STEVEN REID, and
                                           JERRY VICTORIOUS, individually and on behalf
                                           of all others similarly situated,

                                           By their attorneys,

                                           *s/ Shannon Liss-Riordan*
                                           Shannon Liss-Riordan (*pro hac vice*)
                                           Thomas Fowler (*pro hac vice*)
                                           LICHTEN & LISS-RIORDAN, P.C.
                                           729 Boylston Street, Suite 2000
                                           Boston, MA 02116
                                           (617) 994-5800
                                           sliss@llrlaw.com
                                           tfowler@llrlaw.com

                                           *Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 24, 2025, I caused a true and correct copy of the

foregoing to be filed with the Court's CM/ECF system, which constitutes service on Defendants,

whose counsel are registered participants on that system.

<u>*s/ Shannon Liss-Riordan*</u>
Shannon Liss-Riordan
