IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JOHN DOE,** *individually and on behalf of all others similarly situated,* **and BOBBI PISOR,**<br>　　　　　　　**Plaintiffs,**<br><br>　　　　v.<br><br>**AMERICA PAC, GROUP AMERICA, LLC, and ELON MUSK,**<br>　　　　　　　**Defendants.** | **CIVIL ACTION**<br><br><br><br>**NO. 25-1691** |
| **ANTHONY MAGLIETTA, STEVEN REID, and JERRY VICTORIOUS,** *individually and on behalf of all others similarly situated*,<br>　　　　　　　**Plaintiffs,**<br><br>　　　　v.<br><br>**AMERICA PAC, GROUP AMERICA, LLC, and ELON MUSK,**<br>　　　　　　　**Defendants.** | **CIVIL ACTION**<br><br><br><br>**NO. 25-2364** |

**MEMORANDUM OPINION**[1]

This suit arises from an online campaign run by Defendant Elon Musk and his political action committee, Defendant America PAC, targeting registered voters in Arizona, Georgia, Michigan, Nevada, North Carolina, Pennsylvania, and Wisconsin—states commonly referred to as "swing states." In the months leading up to the 2024 Presidential Election, Defendants

---

[1] The above-captioned cases, though not consolidated, are marked as related, so the Court will consider the pending Motions together.

1

offered cash payments to swing-state voters who signed a petition pledging support for the First and Second Amendments to the United States Constitution and who referred others to sign as well.

Plaintiffs John Doe and Bobbi Pisor (together, the "*Doe* Plaintiffs"), and separately Plaintiffs Anthony Maglietta, Steven Reid, and Jerry Victorious (together, the "*Maglietta* Plaintiffs"), brought suit against Musk, America PAC, and Group America LLC ("Group America"), an entity the *Doe* Plaintiffs allege is connected to Musk and America PAC. Plaintiffs assert claims for breach of contract and promissory estoppel under Pennsylvania law, alleging that Defendants failed to pay them the full amounts promised for signing the petition and for successfully referring additional signers. Doe also asserts a claim under the Pennsylvania Wage Payment and Collection Law ("WPCL"), 43 P.S. § 260.1 *et seq*.

Defendants previously moved to dismiss on several grounds, including lack of standing under Federal Rule of Civil Procedure 12(b)(1), improper venue under Rule 12(b)(3), and failure to state a claim under Rule 12(b)(6). The Court granted those motions in part and denied them in part. *See Doe v. Am. PAC* ("*Doe I*"), 2025 WL 2462752 (E.D. Pa. Aug. 26, 2025). Specifically, the Court dismissed, without prejudice, Group America because Plaintiffs failed to plausibly allege a causal connection between their alleged injury—the nonpayment of signing and referral fees—and any conduct attributable to Group America. *Id*. The Court also dismissed, without prejudice, Plaintiffs' promissory estoppel claims because they were not pleaded in the alternative. *Id*. Finally, the Court dismissed, without prejudice, Doe's WPCL claim because Doe did not respond to, or meaningfully address, Defendants' arguments that he had not alleged an employment relationship covered by the WPCL. *Id*.

Subsequently, the *Doe* Plaintiffs filed a Second Amended Complaint (the "*Doe* Amended

Complaint") and the *Maglietta* Plaintiffs filed a First Amended Complaint (the "*Maglietta* Amended Complaint"). The Court now addresses a second round of motions, with this round directed to those amended pleadings.

Defendants move, under Federal Rule of Civil Procedure 12(f), to strike portions of the *Doe* Amended Complaint. Defendants also move, under Rules 12(b)(1) and 12(b)(6), to dismiss portions of the *Doe* Amended Complaint and of the *Maglietta* Amended Complaint for lack of standing and for failure to state a claim. For the reasons that follow, Defendants' Motion to Strike shall be denied, their Motion to Dismiss the *Doe* Amended Complaint shall be granted in part and denied in part, and their Motion to Dismiss the *Maglietta* Amended Complaint shall be denied.

## I.    FACTUAL BACKGROUND[2]

In the run-up to the 2024 Presidential Election, Defendants Musk and America PAC launched an online campaign in Arizona, Georgia, Michigan, Nevada, North Carolina, Pennsylvania, and Wisconsin, offering registered voters cash payments in exchange for signing, and referring others to sign, a petition pledging their support for the First and Second Amendments to the United States Constitution.

The Petition Program was heavily publicized, including at campaign events and on social media. Musk posted on X, the social media platform formerly known as Twitter, a message that garnered over 55 million views, offering to pay each registered swing-state voter $47—an amount later increased to $100 for Pennsylvania voters—in exchange for signing the Petition. Musk and America PAC further promised to give signatories an additional $47, later $100 in

---

[2] Because the factual background has already been recounted, *see Doe I*, 2025 WL 2462752, at *2, only what is necessary for resolution of the present motions and new allegations raised in the *Doe* and *Maglietta* Amended Complaints shall be addressed.

3

Pennsylvania, if they referred other eligible voters to do the same.  In an email sent to signatories after they completed the Petition, America PAC explained that the referrer would "receive a check" so long as the referee: (1) listed the referrer's email address in the corresponding section of the form; (2) "signed [the] petition while a $47 or $100 payment offer was active"; and, (3) "met the criteria of state, voter registration status, and/or confirmed referrals."  Before any payment would be made, America PAC stated it would "verify the accuracy of all information of the referrer and referee."

Doe, Pisor, Maglietta, Reid and Victorious claim that although they "accepted Defendants' offers by signing or successfully referring registered voters" to sign the Petition, "Defendants have since failed to pay [them] in full for their signatures and referrals," which forms the crux of Plaintiffs' breach-of-contract and promissory estoppel claims.

Additionally, Doe, who lives and is registered to vote in Pennsylvania, worked as a paid canvasser for America PAC and Group America in the weeks leading up to the 2024 Presidential Election, promoting the Petition and encouraging eligible voters to sign it.  His paperwork related to this work, including a Form W-2, was provided by Group America.  America PAC provided him with training and supervision, particularly through an America PAC manager brought in from another one of Musk's companies, who required him to check in on a daily basis and assigned various work tasks.  As part of Doe's canvassing work, his America PAC supervisor instructed him to refer voters to sign the Petition while he worked.  He was told that he would be paid an extra $47 (later $100) for every voter he referred to sign the Petition.  These checks were paid by an entity other than America PAC or Group America—specifically, United States of America Inc.

Although Doe received his agreed-upon hourly wage from the canvassing program and

"some" payments for Petition referrals, he maintains that Defendants still owe him approximately $20,000, which forms the basis of his claim under the WPCL.

## II. DISCUSSION

### A. Motion to Strike

At the outset, Defendants move under Federal Rule of Civil Procedure 12(f) to strike certain allegedly unauthorized portions of the *Doe* Amended Complaint. Specifically, they contend that those portions of the Second Amended Complaint that go beyond this Court's prior grant of leave to amend under Rule 15(a)—given in the Court's last opinion for the limited purpose of allowing Plaintiffs to re-plead their promissory estoppel claim in the alternative[3]— should be stricken because, once a party has used its one amendment as of course, any further amendment may be made only with the opposing party's written consent or with leave of court, and the *Doe* Plaintiffs obtained neither. *See* Fed. R. Civ. P. 15(a).

Rule 12(f) provides that a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "The purpose of a motion to strike is to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." *McInerney v. Moyer Lumber & Hardware*, 244 F. Supp.2d 393, 402 (E.D. Pa. 2002); *Dann v. Lincoln Nat'l Corp.*, 274 F.R.D. 139, 143 (E.D. Pa. 2011) (explaining that "Rule 12(f) is not meant to afford an opportunity to determine disputed and substantial questions of law" (citations and internal quotation marks omitted)). Courts possess "considerable discretion" in disposing of such motions. *Adams v. Cnty. of Erie*, 2009

---

[3] Specifically, this Court held "[p]ursuant to Rule 15(a)(2), the *Doe* and *Maglietta* Plaintiffs shall be permitted to amend their Complaints to plead a promissory estoppel claim in the alternative." *Doe I*, 2025 WL 2462752, at *11 n.9.

WL 4016636, at *1 (W.D. Pa. Nov. 19, 2009). That said, motions to strike are "not favored and usually will be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues in the case." *Natale v. Winthrop Res. Corp.*, 2008 WL 2758238, at *14 (E.D. Pa. July 9, 2008) (citation omitted); *see also Kaetz v. Wolfson*, 2022 WL 4115505, at *1 n.2 (3d Cir. Sept. 9, 2022), cert. dismissed, 143 S. Ct. 1012 (2023), reconsideration denied, 143 S. Ct. 1744 (2023). Striking some or all of a pleading is therefore considered "a drastic remedy to be resorted to only when required for the purposes of justice and should be used sparingly." *DeLa Cruz v. Piccari Press*, 521 F. Supp.2d 424, 428 (E.D. Pa. 2007) (citation and internal quotation marks omitted).

Defendants have not met that high burden. They argue that dismissal "without prejudice" preserved only the opportunity for the *Doe* Plaintiffs to seek leave to amend and did not confer on them a unilateral license "to add anything and everything they wanted." They further assert that this purportedly unauthorized expansion prejudices them and burdens judicial and party resources by broadening the scope of the case and disrupting its orderly adjudication, insofar as the *Doe* Plaintiffs' Amended Complaint reintroduces Group America as a defendant, revives Doe's WPCL claim, and expands the pleading with new factual material.

However, dismissal without prejudice amounts to an implicit invitation to the plaintiff to amend the complaint. *See Borelli v. City of Reading,* 532 F.2d 950, 951-52 (3d Cir. 1976) (per curiam) ("[A]n implicit invitation to amplify the complaint is found in the phrase 'without prejudice.'"); *see also Boddie v. Cardone Indus., Inc.*, 2020 WL 5369472, at *5 (E.D. Pa. Sept. 8, 2020), *aff'd*, 2021 WL 4814770 (3d Cir. Oct. 15, 2021) ("In dismissing her claims without prejudice the Court was implicitly granting leave to amend.").

Thus, any dismissal of the claims without prejudice implicitly afforded the *Doe* Plaintiffs

leave to amend.  In their Second Amended Complaint, the *Doe* Plaintiffs merely seek to add meat on the bones of claims that were previously dismissed without prejudice by adding factual allegations; they do not alter the fundamental substance of those claims.  None of these additions are the kinds of "redundant, immaterial, impertinent, or scandalous" allegations that would warrant them to be stricken under Federal Rule of Civil Procedure 12(f).  *See* Fed. R. Civ. P. 12(f).

### B. Motions to Dismiss

Defendants also move to dismiss both the *Doe* Amended Complaint and the *Maglietta* Amended Complaint, asserting a lack of subject matter jurisdiction as well as failure to state a claim.  Rule 12(b)(1) provides that a claim may be dismissed for "lack of subject matter jurisdiction."  Fed. R. Civ. P. 12(b)(1); *In re Schering Plough Corp. Intron*, 678 F.3d 235, 243 (3d Cir. 2012).  A motion to dismiss for want of Article III standing is properly brought pursuant to Rule 12(b)(1) because Article III provides "jurisdictional limitation[s]" that implicate "the Court's power to hear" claims.  *Potter v. Cozen & O'Connor*, 46 F.4th 148, 154-57 (3d Cir. 2022); *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007).

In evaluating a Rule 12(b)(1) motion, a court must first determine whether the movant presents a facial or factual attack.  *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).  A facial attack "contests the sufficiency of the pleadings."  *In re Schering*, 678 F.3d at 243.  As the adjective suggests, such an attack considers a complaint on its face and asserts that "it is insufficient to invoke the subject matter jurisdiction of the court because, for example, it does not present a question of federal law, or because there is no indication of a diversity of citizenship among the parties, or because some other jurisdictional defect is present."  *Const. Party of Pennsylvania v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014).  A factual attack, on

the other hand, "concerns the actual failure of a plaintiff's claims to comport factually with the jurisdictional prerequisites." *CNA v. United States*, 535 F.3d 132, 139 (3d Cir. 2008) (cleaned up). So, for instance, "while diversity of citizenship might have been adequately pleaded by the plaintiff, the defendant can submit proof that, in fact, diversity is lacking." *Aichele*, 757 F.3d at 358. Regardless of the type of attack at issue, the plaintiff, as the party invoking federal jurisdiction, "bears the burden of establishing the elements of standing, and each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *FOCUS v. Allegheny Cnty. Ct. of Common Pleas*, 75 F.3d 834, 838 (3d Cir. 1996) (citation omitted).

Here, Defendants' Rule 12(b)(1) Motions are properly understood as facial attacks, as they assert that the pleadings lack sufficient factual allegations to establish standing. *See In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 632-33 (3d Cir. 2017). Because a facial attack "relies solely on the pleadings," it is analyzed under "the same standard of review [used] when assessing a motion to dismiss for failure to state a claim" under Rule 12(b)(6). *Finkelman v. NFL*, 810 F.3d 187, 194 (3d Cir. 2016). To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[4] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the

---

[4] In their Briefs in Opposition to Defendants' Motion to Dismiss, Plaintiffs once again use the pleading standard articulated in *Schrob v. Catterson*, 948 F.2d 1402, 1408 (3d Cir. 1991), arguing that "[a] complaint can only be dismissed if it appears to a certainty that no relief could be granted under *any set of facts which could be proved*." *Id.* (emphasis added). However, in its last opinion in this matter, the Court drew the Plaintiffs' attention to their mistake—and does so again here: that standard, which found its genesis in *Conley v. Gibson*, 355 U.S. 41 (1957), was retired by the United States Supreme Court nearly twenty years ago in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and is no longer good law.

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. When analyzing a motion to dismiss, the complaint must be construed "in the light most favorable to the plaintiff," with the question being "whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). Legal conclusions are disregarded, well-pleaded facts are taken as true, and the court determines whether those facts state a "plausible claim for relief." *Id.* at 210-11.

### *i.  Article III Standing*

#### a.  Signer-based Claims

Defendants argue that both the *Maglietta* and *Doe* Plaintiffs allege only nonpayment of referral fees, not nonpayment for their own signatures, yet seek to represent a class of unpaid signers. Because no named plaintiff alleges a signer-based injury, Defendants contend that Plaintiffs lack standing for signer-based theories and signer-class allegations. Plaintiffs respond that this argument was already raised and rejected in connection with the previous motions to dismiss, in which this Court held that Plaintiffs had alleged standing to pursue claims for unpaid signatures as well as referrals. They therefore characterize Defendants' present arguments as an improper request for reconsideration without any valid basis.

In ruling on the prior motions to dismiss, this Court held that explicit allegations in the complaints—that "Plaintiffs and Class Members accepted Defendants' offers by signing or successfully referring Pennsylvania registered voters to the America PAC petition. Defendants have since failed to pay Plaintiffs and Class Members in full *for their signatures and referrals*"—when interpreted in the light most favorable to Plaintiffs, were sufficient to establish standing. *Doe I*, 2025 WL 2462752, at *4. That same language appears in the operative

9

complaints here and none of the added allegations in either complaint change the effect of that language.  Accordingly, Defendants' current standing arguments will be treated as motions for reconsideration.  *See Gamboa v. Ford Motor Co.*, 2019 WL 4039979, at *3 (E.D. Mich. Aug. 27, 2019) (concluding that "[d]efendants' Motions to Dismiss are motions to reconsider disguised as motions to dismiss" where "the two complaints are substantially similar" and "the majority of the arguments that Defendants made in their [m]otions to [d]ismiss were either already brought forward, or could have been made in their previous motions to dismiss"); *Brintley v. Aeroquip Credit Union*, 2018 WL 4178338, at *1 (E.D. Mich. Aug. 30, 2018) (treating a motion to dismiss as a motion for reconsideration where "[d]efendant repeats all of the arguments it previously made in its first Motion to Dismiss" but those arguments had already "been thoroughly considered—and rejected—by [the] Court"); *Badwi v. Hedgpeth*, 2012 WL 479192, at *4 (N.D. Cal. Feb. 14, 2012) (treating a motion to dismiss as a motion for reconsideration where the "Court has already reviewed the sufficiency of the allegations").

 As a threshold matter, Defendants' arguments—considered, as they should be, under the rubric of a motion for reconsideration—are untimely.  Defendants' Motions were filed thirty-eight (38) days after this Court issued its August 26, 2025 Memorandum and Order.  Local Rule of Civil Procedure of the Eastern District of Pennsylvania 7.1(g) requires that a motion for reconsideration be filed within fourteen (14) days of an Order.  E.D. Pa. R. Civ. P. 7.1(g); *see also Rodriguez v. City of Philadelphia*, 2018 WL 3036283, at *4 (E.D. Pa. June 18, 2018) (rejecting a motion for reconsideration as untimely for failing to adhere to the time limits specified in Local Rule 7.1(g)); *Rodrick Brayboy v. B. Mason, et al.*, 2025 WL 1674396, at *1 (E.D. Pa. Apr. 9, 2025) (same).

 Even if that were not the case, there are plenty of reasons to deny any such motion here.

Motions for reconsideration "are highly disfavored by courts and are granted sparingly." *Complete Business Solutions Group v. Suess*, 2019 WL 2637731, at *2 (E.D. Pa. June 26, 2019) (citing *Eichelberger v. City of Phila.*, 2018 WL 3730691, at *1 (E.D. Pa. Aug. 3, 2018)). Moreover, "[m]ere dissatisfaction with a court's ruling will not warrant reconsideration." *Id*. (quoting *Jarzyna v. Home Props., L.P.*, 185 F. Supp.3d 612, 622 (E.D. Pa. 2016)). Accordingly, "[c]ourts will consider an issue only 'when there has been an intervening change in the controlling law, when new evidence has become available, or when there is a need to correct a clear error or prevent manifest injustice.'" *Eichelberger*, 2018 WL 3730691, at *1 (quoting *Lei Ke v. Drexel Univ.*, 2013 WL 5508672, at *3 (E.D. Pa. Oct. 4, 2013)). Defendants offer no such justification for reconsidering this Court's rejection of Defendants' argument in its prior Memorandum Opinion and therefore will be denied.

b. Group America

As for the *Doe* Complaint re-adding Group America as a party, Defendants argue Group America was previously dismissed for lack of subject-matter jurisdiction and that the *Doe* Amended Complaint still fails to allege any injury fairly traceable to Group America. In their view, the alleged harm is nonpayment of petition referral fees, not anything tied to Doe's canvassing work and none of these allegations establish that Group America handled Petition referrals or had any role in referral payments. The *Doe* Plaintiffs respond that their added allegations—that Group America was Doe's direct employer (W-2 issuer, payor, paperwork provider) and that Group America and America PAC jointly operated the petition program—cure the prior jurisdictional defect.

Defendants correctly assert that the *Doe* Complaint's additional allegations are merely "extraneous information unrelated to the payments at issue." *Doe I* held that Plaintiffs had not

established standing with respect to Group America because "[a]ll the *Doe* Complaint allege[d] regarding [Group America] is that Doe himself 'worked as a canvasser' for Group America, which 'is a corporate entity with a principal place of business in Austin, Texas,' leading up to the 2024 Presidential Election . . . . Without an explanation of how Group America is remotely related to America PAC or Musk—the defendants who allegedly had the ability to remit payments in furtherance of the Petition Program—the Court cannot conclude that any causal relationship exists between 'the alleged injury in fact and the alleged conduct of th[at] defendant.'" 2025 WL 2462752, at *6.

The *Doe* Amended Complaint still fails to establish standing, as it does not allege any injury fairly traceable to Group America. *Toll Bros. v. Twp. of Readington*, 555 F.3d 131, 142 (3d Cir. 2009) ("The plaintiff must establish that the defendant's challenged actions, and not the actions of some third party, caused the plaintiff's injury . . . . [A]n indirect causal relationship will suffice so long as there is 'a fairly traceable connection between the alleged injury in fact and the alleged conduct of the defendant.'" (quoting *Vt. Agency of Natural Res. v. United States ex rel. Stevens,* 529 U.S. 765, 771 (2000)) (citations omitted). As discussed more fully below, while the additional allegations provide some detail as to Group America's relationship to Musk and America PAC, specifically that he was "jointly employed" by America PAC and Group America and that Group America issued him paperwork related to his canvassing work for the organization, they do not show how the failure to pay the signature and referral payments, the alleged injury here, is connected to Doe's work canvassing for Group America, beyond the fact that he was told to solicit signatures and referrals as part of his job responsibilities for which he concedes he was paid his hourly wage.

Accordingly, Group America shall be dismissed from the *Doe* Amended Complaint

without prejudice. *See Figueroa v. Buccaneer Hotel Inc.*, 188 F.3d 172, 182 (3d Cir. 1999) (explaining that dismissals for lack of subject-matter jurisdiction shall be made without prejudice).

### ii.   *Breach of Contract and Promissory Estoppel*

#### a.   Conditions Precedent

Defendants also argue that while Federal Rule of Civil Procedure 9(c) allows general averments that conditions precedent have occurred, such averments must still be plausible as per *Twombly* and *Iqbal*. They contend any duty to pay referrals depended on third-party contingencies (eligibility, actual signing, and listing the referrer), and that the Plaintiffs plead no facts showing those conditions were met, instead admitting they lack that information. In making this point, Defendants assume—incorrectly—that *Twombly* and *Iqbal*'s heightened pleading standard applies to conditions precedent. *See Hildebrand v. Allegheny Cnty.*, 757 F.3d 99, 112 (3d Cir. 2014) ("[P]leading of conditions precedent falls outside the strictures of *Iqbal* and *Twombly.*"). While under Federal Rule of Civil Procedure 8(a) "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *see Iqbal,* 556 U.S. at 678; *see also Twombly,* 550 U.S. at 555, the "pleading of conditions precedent is governed by Rule 9(c), not Rule 8(a). Neither *Iqbal* nor *Twombly* purport to alter Rule 9." *Hildebrand*, 757 F.3d at 112. Accordingly, Plaintiffs' allegations that they "successfully referr[ed]" registered voters to the petition suffice to plead that conditions precedent have occurred. *See* Fed. R. Civ. P. 9(c) ("In pleading conditions precedent, it suffices to allege generally that all conditions precedent have occurred or been performed.").

Even so, the Plaintiffs point out—correctly—that the Court has already rejected Defendants' conditions precedent challenge, holding their general Rule 9(c) allegation sufficient having found that Plaintiffs' general averments were sufficient to state breach-of-contract and

promissory estoppel claims. *See Doe I,* 2025 WL 2462752, at *10 ("Because the *Doe* and *Maglietta* Complaints must be viewed in the light most favorable to Plaintiffs, the Court will construe Plaintiffs' allegation that they 'successfully referr[ed]' eligible voters to mean that they complied with any conditions precedent to payment under the Petition Program . . . . [G]eneral averments regarding conditions precedent are sufficient under Rule 9."). The relevant allegations have not changed in the amended complaints filed after the last motions to dismiss, and Defendants have offered no justification for this Court to grant what is, in substance, once again a disguised motion for reconsideration. Accordingly, the Court denies Defendants' Motions to Dismiss to the extent they are premised on the contention that Plaintiffs failed to allege that they plausibly satisfied the conditions precedent relevant to the alleged breach-of-contract and promissory estoppel claims.

      b. <u>Musk Liability</u>

Defendants argue further that Plaintiffs plead no contractual privity or clear, definite personal promise by Elon Musk, and that any promotional post was made in his capacity as founder/agent of America PAC, and therefore the breach-of-contract and promissory estoppel claims against Musk should be dismissed. They also contend that, even if Musk qualifies as an "agent or officer" of America PAC, the complaints allege no facts that could justify piercing the corporate veil. *See Brown v. Johnson & Johnson*, 64 F. Supp. 3d 717, 725 (E.D. Pa. 2014) ("Piercing the corporate veil is 'an extraordinary remedy and will only be employed in exceptional circumstances.'" (quoting *Fort Washington Resources, Inc. v. Tannen,* 153 F.R.D. 565, 567 (E.D. Pa. 1994))). Plaintiffs respond by invoking Rule 12(g)(2), arguing that Defendants may not raise new Musk-specific arguments in a successive motion when those arguments were available at the time of Defendants' earlier motions to dismiss.

Indeed, a defendant cannot assert in a new motion to dismiss arguments when they could have been raised in prior motion to dismiss. *See Oliver v. Roquet*, 858 F.3d 180, 188 (3d Cir. 2017) ("[O]nce a party has filed a motion to dismiss under Rule 12 of the Federal Rules of Civil Procedure, that party, with limited exceptions, 'must not make another [such motion] raising a defense or objection that was available to the party but omitted from its earlier motion,' (quoting Fed. R. Civ. P. 12(g)(2))); *Novak v. Torcon, Inc.*, 2025 WL 2111068, at *2 (E.D. Pa. July 28, 2025) ("Rule 12(g)(2) of the Federal Rules of Civil Procedure prohibits a party from filing 'another motion under [Rule 12] raising a defense or objection that was available to the party but omitted from its earlier motion.' Although Rule 12(g)(2) includes an exception for defenses or motions raised under Rule 12(h)(2) or (3), that exception does not apply here. Neither Rule 12(b)(6) nor Rule 12(f) motions are among those listed as exceptions in Rule 12(h)(2) or (3)." (quoting Fed. R. Civ. P. 12(g)(2)))[5]; *Stansfield v. Summitquest Acad.*, 2006 WL 573795, at *2 (E.D. Pa. Mar. 9, 2006) (declining to dismiss where "defenses to [plaintiff's] claims . . . were available to Moving Defendants when they filed their second motion to dismiss" but "not addressed" in the moving defendants' previously filed motions to dismiss, and holding that defendants "may not now present new defenses to claims in their third motion to dismiss that

---

[5] Federal Rule of Civil Procedure 12(h)(2) states that a motion for "[f]ailure to state a claim . . . may be raised: (A) in any pleading allowed or ordered under Rule 7(a); (B) by a motion under Rule 12(c); or (C) at trial." Fed. R. Civ. P. 12(h)(2). A motion to dismiss is not a Rule 7(a) pleading. *Chan v. Cnty. of Lancaster*, 2012 WL 4510776, at *13 n.35 (E.D. Pa. Sept. 28, 2012) ("[D]efendants' motion to dismiss does not constitute a pleading as specified under Rule 7(a). Rule 7(a) of the Federal Rules of Civil Procedure specifies that '[o]nly these pleadings are allowed: (1) a complaint; (2) an answer; (3) an answer to a counterclaim designated as a counterclaim; (4) an answer to a cross claim; (5) a third-party complaint; (6) an answer to a third party complaint; and (7) of the court orders one, a reply to an answer.'" (quoting Fed. R. Civ. P. 7(a))). Additionally, motions under Rule 12(c) are for judgment on the pleadings, which is not a motion brought here. *See* Fed. R. Civ. P. 12(c).

Rule 12(h)(3) provides a separate exception for exception for motions to dismiss for lack of subject-matter jurisdiction: "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). That exception likewise does not apply to Defendants' contention that Plaintiffs have failed to state a claim against Defendant Musk.

they could have brought in their second motion to dismiss"); *cf. Kroger Co. v. New Enter. Stone & Lime Co.*, 2018 WL 4615955, at *2 (E.D. Pa. Sept. 25, 2018) ("[W]hen a plaintiff's amended complaint contains new factual averments, Rule 12(g)(2) does not apply and defendants are entitled to challenge with another Rule 12(b)(6) motion.").

Defendants maintain that they are merely responding to new theories raised in the amended complaints, but that is incorrect. As to the *Maglietta* Amended Complaint, the only substantive addition was to plead promissory estoppel in the alternative, as this Court expressly permitted after the last motions to dismiss. As to the *Doe* Amended Complaint, apart from adding that the promissory estoppel allegations were in the alternative, the additional factual material does not introduce any new, relevant information concerning the existing breach-of-contract and promissory estoppel claims against Musk. Rather, it largely concerns Doe's WPCL claims, seeking to prove a relationship between Group America and the nonpayment of referral checks—for example, alleging that the referral checks were "paid by another entity formed by Elon Musk," that "Mr. Musk acted as an agent or officer" of Group America and America PAC, and that "Mr. Doe was trained by an America PAC manager who had been brought in from the Boring Company, another company owned by Elon Musk." None of these allegations provide new information that would have prevented Defendants from raising the Musk liability defenses they now seek to assert in their earlier motions.

Accordingly, the Court denies Defendants' Motions to Dismiss to the extent they are premised on the contention that Plaintiffs plead no contractual privity or clear, definite personal promise by Elon Musk.

### iii.   *Pennsylvania Wage Payment and Collection Law*

Lastly, Defendants advance two reasons why this Court should dismiss the *Doe* Amended

Complaint's attempt at re-asserting Doe's WPCL claims: (1) the referral payments are not "wages" or "wage supplements" under the WPCL; and, (2) Doe has not adequately pled an employer–employee relationship with Musk or Group America. Because Plaintiffs have not demonstrated that the disputed referral payments were intended as compensation arising out of Doe's employment with Group America, the Court may dismiss this claim without reaching Defendants' second argument. *See Miller v. Cerebain Biotech Corp.*, 2016 WL 6600009, at *3 (E.D. Pa. Nov. 8, 2016) ("[A]s a prerequisite to relief under the WPCL, a plaintiff must allege that he or she (a) is an employee *and* (b) is under a contract with his or her employer for wages to be paid.") (emphasis added).

The *Doe* Plaintiffs contend that the unpaid referral payments fall within the WPCL's broad definition of "wages" and "wage supplements" and that Doe's supervisor instructed him, as part of his canvassing job, to obtain petition signatures and referrals, thereby making the referral payments part of his compensation. Defendants respond that the referral program was a non-employment incentive, open to any eligible voter, and that Plaintiffs are impermissibly attempting to transform that incentive into "wages."

To state a WPCL claim, "the employee must aver a contractual entitlement 'to compensation from wages' and a failure to pay that compensation." *Braun v. Wal-Mart Stores, Inc.*, 24 A.3d 875, 954 (Pa. Super. 2011) (quoting *Sullivan v. Chartwell Inv. Partners, LP*, 873 A.2d 710, 716 (Pa. Super. 2005)). "Wages" for purposes of the WPCL include "all earnings of an employe, regardless of whether determined on time, task, piece, commission or other method of calculation" and "fringe benefits or wage supplements," such as bonuses or "any other amount to be paid pursuant to an agreement to the employe[.]" 43 P.S. § 260.2a. "[A]bsent a formal employment contract or collective bargaining agreement, an employee raising a WPCL claim

would have to establish, at a minimum, an implied oral contract between the employee and employer." *Braun*, 24 A.3d at 954 (citing *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 309 (3d Cir. 2003)). "The burden of proving the existence of a contract lies with the party relying on its existence." *Edmondson v. Zetusky*, 674 A.2d 760, 764 (Pa. Commw. 1996).

Importantly, for a payment to qualify as a "wage" or "wage supplement," it must be "offered to plaintiffs as employees, and not for some reason entirely unrelated to their employment." *Braun*, 24 A.3d at 954 (citing *Bowers v. NETI Techs., Inc.*, 690 F. Supp. 349, 353 (E.D. Pa. 1988)); *Blackwell-Murray v. PNC Bank*, 963 F. Supp.2d 448, 470 (E.D. Pa. 2013) ("The burden falls on Plaintiff, however, to prove that the bonus is 'earned,' *i.e.* that the right to the wage or bonus *vested under the terms of employment*.") (emphasis added). The *Doe* Plaintiffs attempt to satisfy this requirement by alleging that an America PAC supervisor instructed Doe, as part of his canvassing work, to refer eligible voters to sign the Petition, thereby characterizing the referral payments as being offered to him in his capacity as an employee rather than for some other reason. Yet Defendants correctly point out that the referral payments were offered on uniform terms to any qualifying participant across a broad swath of the general public; they do not become "wages" merely because an employee working on a separate, related program also happens to earn them. *See*, *e.g.*, *Kafando v. Erie Ceramic Arts Co.*, 764 A.2d 59, 62 (Pa. Super. 2000) (holding that a bonus paid uniformly to employees based on company profits was not a "wage" under the WPCL because the bonus was "solely dependent upon company earnings, and not related to any work performed by the individual employees"). The *Doe* Amended Complaint never connects the referral payments to Doe's compensation package: they are not alleged to have been included in any wage rate, pay policy, or compensation plan. The allegation that, in addition to his hourly canvassing wage, Doe was

"told he would be paid an extra $47 (or later $100) for every voter he referred" to sign the Petition does not establish the necessary link to "compensation from wages" under the WPCL. Doe fails to show that he was not paid the referral amounts in his capacity as a canvasser, rather than simply as a member of the general public who participated in the Petition Program by referring others to sign. Thus, Doe's WPCL claim shall be dismissed without prejudice.

An appropriate order follows.

**BY THE COURT:**

**S/ WENDY BEETLESTONE**

_____
**WENDY BEETLESTONE, C.J.**